RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0411p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FERNANDO LOPEZ,

 *Petitioner-Appellant,*

 *v.*

 No. 01-3875

JULIUS WILSON, Warden,

 *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-02416—Donald C. Nugent, District Judge.

Argued: December 8, 2004

Decided and Filed: October 7, 2005

Before: BOGGS, Chief Judge; MARTIN, SUHRHEINRICH, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Robert D. Little, LAW OFFICE OF ROBERT LITTLE, Maplewood, New Jersey, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Robert D. Little, LAW OFFICE OF ROBERT LITTLE, Maplewood, New Jersey, for Appellant. M. Scott Criss, Douglas R. Cole, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. Michael J. Benza, Cleveland, Ohio, Elvert S. Briscoe, Grafton, Ohio, for Amici Curiae.

 SUHRHEINRICH, J., delivered the opinion of the court, in which BOGGS, C. J., BATCHELDER, GILMAN, GIBBONS, ROGERS, and SUTTON, JJ., joined. COLE, J. (pp. 17-19), delivered a separate concurring opinion, in which DAUGHTREY, J., joined, and ROGERS, J. (p. 20), delivered a separate concurring opinion. MARTIN, J. (pp. 21-27), delivered a separate dissenting opinion, in which MOORE and CLAY, JJ., joined.

---
**OPINION**
---

SUHRHEINRICH, Circuit Judge.

## I. Introduction

Ohio Rule of Appellate Procedure 26(B) allows defendants to "reopen an appeal" on the basis of ineffective assistance of appellate counsel provided during the first direct appeal of right. The 26(B) process operates in two stages. First, the court considers the application. Second, if it accepts the application, the court then reopens the appeal. At stage two, the rule gives indigent defendants a right to appointed counsel, but at stage one it does not. If the 26(B) procedure is part of the initial direct appeal of right, assistance of counsel is constitutionally required at both stages. *See Douglas v. California*, 372 U.S. 353 (1963) (holding that a state is required to provide counsel to an indigent defendant on appeal as of right). By contrast, if Rule 26(B) creates a collateral post-conviction procedure, indigent defendants have no Sixth Amendment right to appointed counsel. *See Pennsylvania v. Finley,* 481 U.S. 551 (1987) (holding that there is no federal constitutional right to counsel for indigent prisoners seeking state postconviction relief).

In his habeas petition, Petitioner Fernando Lopez argued that the state courts' denial of appointed counsel to help him prepare his 26(B) application violated his constitutional right to assistance of counsel because the 26(B) procedure is part of the initial direct appeal as of right. A panel of this Court rejected Lopez's claim. *See Lopez v. Wilson*, 355 F.3d 931 (6th Cir.) (holding that the Ohio Court of Appeals' decision that the petitioner was not entitled to a Sixth Amendment right to appointment of counsel for filing an application to reopen his direct appeal was not contrary to clearly established federal law), *vacated*, 366 F.3d 430 (2004). Because panels of this court have split over the correct characterization of the rule, we granted en banc review. *See Lopez*, 355 F.3d 931 (holding that it is not clearly established under federal law that applications to reopen direct appeal are part of the direct appeal process creating a Sixth Amendment right to appointed counsel); *contra White v. Schotten*, 201 F.3d 743 (6th Cir. 2000) (finding the rule to be part of the direct appeal). For the reasons that follow, we conclude that Rule 26(B) creates a collateral post-conviction procedure, and is not part of the direct right of appeal. We therefore overrule *White v. Schotten*.

## II. Background

Lopez was convicted in 1998 of three counts of rape and three counts of gross sexual imposition. He was sentenced to three concurrent sentences of life imprisonment for the rape convictions, consecutive to three years on each count of gross sexual imposition, which are concurrent to one another. The Ohio Court of Appeals affirmed the convictions on direct appeal. *State v. Lopez*, No. 74096, 1999 WL 304527 (Ohio Ct. App. May 13, 1999). Lopez was represented by counsel during that appeal.

In December of 1999, Lopez filed a pro se application to reopen his appeal under Ohio R. App. P. 26(B), alleging that his lawyer in his direct appeal was ineffective. Lopez also requested appointment of counsel for his application to reopen. The appeals court ordered a copy of his trial transcripts and ordered all proceedings not previously transcribed as part of the direct appeal to be transcribed and filed with the court. On May 11, 2000, the Ohio Court of Appeals denied the motion to reopen the appeal and denied the motion for appointment of counsel, ruling that Lopez had failed to raise a colorable claim that his original appellate counsel was ineffective. *State v. Lopez*, No. 74096, 2000 WL 574441 (Ohio Ct. App. May 11, 2000). The Ohio Supreme Court declined review. *State v. Lopez*, 732 N.E.2d 999 (Ohio 2000).

On September 21, 2000, Lopez filed a petition for a writ of habeas corpus, alleging that he was denied his federal right to effective assistance of appellate counsel during his application to reopen, and denied effective assistance of counsel on his first direct appeal. The district court denied the petition, holding that Lopez was not entitled to habeas relief on either claim because the state court decisions were not contrary to or an unreasonable application of clearly established law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000).

Lopez appealed to this Court. On February 14, 2002, we granted a certificate of appealability on the following issue: "Whether Lopez was denied the right to the effective assistance of appellate counsel during his application for reopening filed under Ohio App. R. 26(B)." A panel of this Court held that the Ohio Court of Appeals' ruling that Lopez was not entitled to appointment of counsel during his application to reopen his direct appeal was not contrary to clearly established law. *Lopez v. Wilson*, 355 F.3d 931. One panel member concurred in the judgment only.

On April 20, 2004, we vacated this decision and granted en banc review to decide the proper classification of Rule 26(B) proceedings under federal law.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1) (1994 & Supp. VII) ("AEDPA"), governs this appeal. Under the AEDPA, an application for a writ of habeas corpus by a state prisoner shall not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) if the state court arrived at the conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than a Supreme Court decision on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when the state court identified the correct legal principle from the Supreme Court but unreasonably applied that principle to the facts of the case before it. *Id.*

### IV. Analysis

Rule 26(B), of the Ohio Rules of Appellate Procedure, as amended on July 1, 1993, provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

The rule does not indicate whether it is a part of a defendant's direct appeal or the state's collateral review process.

*State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992), prompted the creation of the Rule 26(B) procedure. Murnahan had been convicted of and sentenced for aggravated vehicular homicide and involuntary manslaughter under Ohio law. *Id.* at 1205-06. Counsel on direct appeal submitted an *Anders* brief and was permitted to withdraw. *Id.* at 1206. After giving Murnahan an opportunity to file a pro se brief, the Ohio Court of Appeals ultimately rejected his appeal. Murnahan next sought post-conviction relief in the state trial court under Ohio Rev. Code § 2953.21, claiming his appellate counsel had been ineffective. The state trial court rejected his appeal on the ground that

such claims were not cognizable under Ohio Rev. Code § 2953.21. *Id.* The Ohio Court of Appeals reversed, but certified the issue to the Ohio Supreme Court. *Id.*

The *Murnahan* court held that ineffective assistance of appellate counsel claims are not cognizable in post-conviction proceedings pursuant to § 2953.21 because it would be improper for an inferior court to rule on the adequacy of a proceeding in a superior appellate court. *Id.* at 1208. The Court held that a defendant with such a claim was not without a remedy, though, "since these issues could have been raised in an application for reconsideration in the court of appeals or a direct appeal to [the Ohio Supreme Court]," *id.* at 1208-09, by bringing such claims in the Ohio appellate courts under the then-existing version of Rule 26. *Id.* at 1209 n.3. Although by its terms Rule 26 seems to permit only reconsideration of "any cause or motion submitted on appeal," the Ohio Supreme Court decided to "construe claims of ineffective assistance of appellate counsel to be tantamount to constitutional claims that should have been presented on appeal," and thus within the scope of the rule. *Id.* The Ohio Supreme Court added that "[s]ince claims of ineffective assistance of appellate counsel may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for reconsideration," the claims could be raised under Rule 26, even after an indefinite delay, if the application of the doctrine of *res judicata* would be unjust. *Id.* at 1209.

At the same time, the Court recognized the imperfect fit between Rule 26 and ineffective-assistance-of-appellate-counsel claims, and recommended that Rule 26 be amended. *Id.* at 1209 n.6. In response, the Ohio Supreme Court amended the rule in 1993. However, *Murnahan* did not decide what form a new remedy would take. The revised rule also does not indicate whether such proceedings are to be treated as part of direct or collateral review. This Court did so in *White v. Schotten*, 201 F.3d at 743, a pre-AEDPA case, holding that Rule 26(B) application is part of a criminal defendant's direct appeal.

White had been convicted of one count of aggravated murder and two counts of felonious assault under Ohio law. *Id.* at 748. Counsel in that case did not file a Rule 26(B) application until almost three years after the ninety-day limit for such filings had expired. *Id.* The Ohio Court of Appeals rejected the Ohio Public Defender's excuse of excessive workload as cause for failure to meet the deadline and dismissed the application without addressing the merits. *Id.* The Ohio Supreme Court affirmed. *State v. White*, 647 N.E.2d 787 (Ohio 1995). The United States Supreme Court denied certiorari. *White v. Ohio*, 516 U.S. 892 (1995).

White then filed a federal habeas corpus petition, alleging in relevant part that his original appellate counsel had been ineffective. *White*, 201 F.3d at 748-49. The district court denied the claim as procedurally defaulted, based on the Ohio Public Defender's failure to file a timely Rule 26(B) application.[1] This Court reversed. *Id.* at 754. We noted that "an attorney's failure or refusal to abide by established time deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards." *Id.* at 752 (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984), and *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). This conclusion alone did not resolve the matter however, because, as the State of Ohio argued, a criminal defendant has a constitutional right to assistance only on direct appeal and not on collateral review.

Thus, resolution of the issue in *White* depended upon the proper classification of Rule 26(B). In concluding that an application to reopen an appeal under Rule 26(B) is part of the direct appeal process, the *White* court reasoned:

---

[1]The *White* case applied *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), in assessing the state's argument that a federal habeas claim had been procedurally defaulted. 201 F.3d at 749-52.

The State of Ohio argues . . . that a petitioner such as White has no constitutional right to counsel at any stage of criminal proceedings beyond a direct appeal as of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 . . . (1987). Without a right to counsel, the petitioner also has no commensurate right to effective assistance from that counsel. However, as this court's decision in *Manning v. Alexander*, 912 F.2d 878, 882 (6th Cir. 1990), made clear, Ohio law does not consider an attack on the adequacy of appellate counsel to be proper in a state habeas proceeding. *See Manning,* 912 F.2d at 882 (citing *Manning v. Alexander*, 50 Ohio St.3d 127, 553 N.E.2d 264 (Ohio 1990); *In re: Petition of Brown*, 49 Ohio St.3d 222, 551 N.E.2d 954 (1990)). Furthermore, *Murnahan* emphatically holds that any such attack cannot be considered part of an Ohio post-conviction matter.

If the application for delayed reconsideration is neither part of a state habeas nor state post-conviction proceeding, it must be a continuation of activities related to the direct appeal itself. Because a defendant is entitled to effective assistance of counsel on direct appeal, *see Evitts v. Lucey*, 469 U.S. 387, 396 . . . (1985), such an individual must be accorded effective assistance of counsel throughout *all* phases of that stage of the criminal proceedings.

*White*, 201 F.3d at 752-53. The *White* panel therefore concluded that White had established cause for the failure to follow Rule 26(B), and prejudice because White had a constitutional right to counsel at that stage. The *White* court therefore remanded for consideration of White's claim on the merits. *Id.* at 754. The United States Supreme Court denied certiorari. *Bagley v. White*, 531 U.S. 940 (2000).

Notwithstanding our ruling in *White*[2], panels of this Court continued to treat *Murnahan/*26(B) proceedings as post-conviction relief. *See, e.g., Scott v. Mitchell*, 209 F.3d 854, 862 (6th Cir. 2000) (noting that, in addition to seeking relief pursuant to Ohio Rev. Code § 2953.21, the petitioner "also pursued *post-conviction relief* pursuant to *State v. Murnahan*" (emphasis added)); *Martin v. Mitchell*, 280 F.3d 594, 604 (6th Cir. 2002) (referring to a *Murnahan* proceeding as "*post-conviction* application for delayed reconsideration" (emphasis added)).[3]

---

[2]*See also Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (pre-*White*, reading *Murnahan* as holding that "claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings *(at the trial court level)*" (emphasis added)).

[3]The Ohio courts have been unanimous in treating Rule 26(B) applications as part of collateral review, both before and after *White*. *See, e.g., State v. Creasey*, 2001 WL 1167121, at *1 (Ohio Ct. App. Aug. 29, 2001) (holding that, notwithstanding *White*, there is no constitutional right to assistance of counsel under Rule 26(B)); *State v. Marcum*, 2002 WL 42894, at *3 (Ohio Ct. App. Jan. 14, 2002) (same); *State v. Darrington*, 2000 WL 1655236, at * 2 (Ohio Ct. App. Oct. 27, 2000) (holding that, notwithstanding *White*, 26(B) applications are post-conviction proceedings); *State v. Bragg*, 2001 WL 1671424, at *1 (Ohio Ct. App. Nov. 26, 2001) (same); *State v. Walker*, 2001 WL 1167158, at *2 (Ohio Ct. App. Aug. 3, 2001) (same); *State v. Dozier*, 2002 WL 42964, at *2 (Ohio Ct. App. Jan. 3, 2002) (same); *State v. Collins*, 2002 WL 77117, at *1 (Ohio Ct. App. Jan. 22, 2002) (agreeing that there is no right to counsel in Rule 26(B) application to reopen appeals, notwithstanding *White*).

Although prior to *Morgan v. Eads*, 818 N.E.2d 1157 (Ohio 2004), the Ohio Supreme Court had never directly addressed the issue, *see Collins*, 2002 WL 77117, at *1; *Marcum*, WL 42894, at *2 n.1, it had characterized a Rule 26(B) application to reopen an appeal as a post-conviction proceeding, not part of a direct appeal. *See State v. Robinson,* 660 N.E.2d 472 (Ohio 1996) (unpublished order) (calling the Rule 26(B) process a "civil, post-conviction matter"); *State v. Lanham*, 656 N.E.2d 948 (Ohio 1995) (same); *State v. Cole*, 637 N.E.2d 928 (Ohio 1994) (unpublished order) (same). And, in Supreme Court Practice Rule II, Section 2(A)(4)(b), the Ohio Supreme Court indicated as such: "The provision for delayed appeal applies to appeals on the merits and does not apply to appeals involving postconviction relief, including appeals brought pursuant to . . . App. R. 26(B)." Rule II, Sec. 2(A)(4)(b) of the Ohio Supreme Court's Rules of Practice. *See Bragg,* 2001 WL 1671424, at *1 (observing that the Supreme Court recognized Rule 26(B)'s status as a postconviction petition in Section 2(A)(4)(b)). In other words, "the Ohio Supreme Court has acknowledged by its practice rule" that Rule 26(B) is in the nature of a postconviction matter. *See Collins*, 2002 WL 77117, at *1 (citing *State*

In several other decisions we addressed the question of whether a Rule 26(B) motion was part of direct or collateral review for purposes of the AEDPA statute of limitations and its tolling provision. *See Isham v. Randle,* 226 F.3d 691 (6th Cir. 2000); *Bronaugh v. Ohio,* 235 F.3d 280 (6th Cir. 2000); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001); *Miller v. Collins*, 305 F.3d 491, 493-95 (6th Cir. 2002); *Griffin v. Rogers*, 308 F.3d 647, 655 (6th Cir. 2002). Under 28 U.S.C. § 2244(d)(1)(A), a conviction becomes final for purposes of the one-year period of limitations upon "conclusion of direct review or the expiration of the time for seeking such review."[4] Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." In other words, "[s]ection 2244 explicitly distinguishes between the conclusion of direct review, after which the limitation period begins to run, 28 U.S.C. § 2244(d)(1)(A), and post-conviction remedies, during which the limitation period is merely tolled, § 2244(d)(2)." *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). *See also Lambert v. Warden*, *Ross Corr.*, No. 01-3422, 2003 WL 22071466, at *3 (6th Cir. Sept. 2, 2003) ("The distinction between direct and collateral review is significant in the application of the AEDPA time limit. Direct review delays the start of the statute of limitations. Collateral review merely tolls its running. Direct review is not subject to a 'properly-filed' requirement. Collateral review is. On direct review, the time for filing of petitions of certiorari and proceedings in the United States Supreme Court do not count towards the limitation period. On collateral review, they do.").

Eight months after *White*, without reference thereto, we issued *Isham*, which addressed the effects of Rule 26(B) applications on the AEDPA statute of limitations. In *Isham*, we treated Rule 26(B) applications as collateral attacks under § 2244(d)(2), rather than as part of direct review under § 2244(d)(1)(A). This analysis and conclusion is inconsistent with *White's* holding that Rule 26(B) applications are part of direct review.

---

*v. Moore*, 758 N.E.2d 1130 (Ohio Ct. App. 2001)).

Indeed, the *Morgan* court noted that the Ohio courts of appeals have been "unanimously hostile" to *White's* characterization of the Rule 26(B) process, *id.,* (quoting *Lambert v. Warden, Ross Correctional*, No. 01-3422, 2003 WL 22071466, at *5 (6th Cir. Sept. 2, 2003)), and inconsistent with the Ohio Supreme Court's recognition that Rule 26(B) represents a postconviction remedy. *Id.* (citing, *inter alia, State v. Robinson*, 660 N.E.2d 472 (Ohio 1996) (describing the Rule 26(B) process rule as a "civil, post-conviction matter"), and *State v. Boone*, 658 N.E.2d 788 (Ohio 1996) (same)) as well as the Supreme Court's own Rules of Practice, which refer to "appeals involving postconviction relief, including appeals brought pursuant to . . . App. R. 26(B)." *Id.* (quoting S. Ct. Prac. R. II(2)(A)(4)(b)).

[4] 28 U.S.C. § 2244(d) provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

As pointed out in *Lambert*, to reach this conclusion, *Isham*, necessarily, albeit implicitly, held that Rule 26(B) applications are part of collateral and not direct review.

> *Isham*, in five printed pages devoted exclusively to the application of § 2244(d) to 26(B) applications, held that 26(B) applications are [not]**5** part of direct review, without so stating in a single sentence, presumably because it occurred neither to the court nor the parties that this could be in need of stating. Yet, for several reasons, it is undeniable that the *Isham* court made this implicit holding. First, the opinion performs "properly-filed" analysis under § 2244(d)(2), which would be applicable only on collateral review. *Isham*, 226 F.3d at 693-94. Second, the court argues that because § 2244(d)(1)(A) (controlling direct review) explicitly mentions the time for expiring of review, but § 2244(d)(2) (controlling collateral review) fails to mention such time, the statute runs during the time for filing for Supreme Court review of the denial of 26(B) applications. *Id.* at 695. *This argument would be perverse if the court had not concluded that 26(B) applications are part of collateral review.* Third, the court argues that because a prisoner can file for habeas relief while a petition for certiorari from denial of post-conviction relief is pending, the statute ran while the denial of a 26(B) application could have been subject to such a petition. *Ibid. Again, this argument would be meaningless if the court did not consider a 26(B) application part of post-conviction relief.* Moreover, nothing in *Isham* suggests that the court merely adopted the position that 26(B) applications are part of collateral review *arguendo*. Therefore, it is difficult to contend that *Isham* and *White* are not in open conflict.

*Lambert*, 2003 WL 22071466, at *9 (emphases added).

In *Bronaugh*, issued subsequent to *Isham*, the petitioner appealed the district court's dismissal of his habeas petition as untimely. *Bronaugh*, 235 F.3d at 281. The State argued that Bronaugh's Rule 26(B) application to reopen direct appeal was a form of post-conviction or other collateral review, and because it did not meet the "properly filed" requirement of § 2244(d)(2), it could not toll the statute of limitations under § 2244(d). *Id.* at 285. The *Bronaugh* panel framed the issue as follows:

> If a Rule 26(B) application to reopen direct appeal is considered part of the direct review process, . . . there is no need to analyze whether it is a "properly filed application for State post-conviction or other collateral review." § 2244(d)(2). Instead, if a Rule 26(B) application is part of the direct appeal, then § 2244(d)(1)(A) is the relevant limitations provision. Moreover, because § 2244(d)(1)(A) states that the one-year period of limitations should not run until the "conclusion of direct review [,]" the statute of limitations could not continue to run while a defendant's Rule 26(B) application to reopen direct appeal was being considered by the Ohio appellate courts.

*Id.*

---

**5**The omission of the word "not" was clearly inadvertent, as is apparent from the discussion that follows this sentence, as well as *Lambert's* discussion of *Isham* throughout the opinion.

Attempting to adhere to *White*, the *Bronaugh* court then stated:

> This court's classification of Rule 26(B) applications is controlled by the recent Sixth
> Circuit precedent of *White v. Schotten*, 201 F.3d 743 (6th Cir.2000), *cert. denied*, 531
> U.S. 940 . . . (2000). . . .
>
>     We follow the *White* court's express holding that Rule 26(B) applications to
> reopen direct appeal are part of the direct appeal process. *See id.* Given the clear
> statement in *White* that 26(B) applications are part of direct review, a discussion of
> whether an untimely Rule 26(B) application is a "properly filed" application for post-
> conviction relief is unnecessary. Instead, because § 2244(d)(1)(A) states that the one-
> year period of limitations will not run until the "conclusion of direct review[,]" and
> because we have held in *White* that Rule 26(B) applications are part of direct review,
> the statute of limitations should not run during the time in which Bronaugh's Rule
> 26(B) application was pending in the Ohio courts.

*Id.* at 285-86 (footnote omitted).  However, in the next breath, the *Bronaugh* court stated:

> It is important to note that Bronaugh will not be able to benefit from his delay in
> bringing a Rule 26(B) application to reopen direct appeal by requesting that
> § 2244(d)(1)(A)'s one-year statute of limitations not begin until after his Rule 26(B)
> application has run its course through the courts. Instead, the statute of limitations is
> tolled only for that period of time in which the Rule 26(B) application is actually
> pending in the Ohio courts.

*Id.* at 286 (footnote omitted).  The *Bronaugh* court then counted against his one-year limitations
period the time between the expiration of the time for a writ of certiorari from the United States
Supreme Court on direct appeal[6] and when Bronaugh filed his Rule 26(B) application. *Id.* However,
after tolling the period of time during which Bronaugh's Rule 26(B) application was pending in the
Ohio courts, Bronaugh's petition was within the one-year statute of limitations in § 2244(d) and
therefore timely. *Id.* at 287.

     Thus, although it initially followed *White*'s holding that a Rule 26(B) application is part of
direct review within the purview of § 2244(d)(1)(A) and therefore not subject to the properly-filed
requirement of § 2244(d)(2), *Bronaugh* actually applied § 2244(d)(2)'s tolling to the Rule 26(B)
application, rather than treating it as delaying the start of the limitations period, as required under
§ 2244(d)(1)(A).

     A panel of this Court addressed the issue again in *Searcy*.  The petitioner, Searcy, had filed
a motion for a delayed appeal with the Ohio Supreme Court after the one-year limitations for federal
habeas review under the AEDPA had expired. *Searcy*, 246 F.3d at 516.  After the Ohio Supreme
Court denied his motion, Searcy filed his federal habeas petition.  The district court dismissed it as
untimely. *Id.* at 517.  On appeal, Searcy contended that if Ohio's delayed appeals are part of direct
review, consistent with the *White* court's ruling regarding Rule 26(B) applications, then the district
court erred by treating the application for delayed appeal as merely tolling the time limit under
§ 2244(d)(2) rather than as restarting it under § 2244(d)(1)(A).  This Court rejected this argument:

> This is a position that we cannot endorse, because it would effectively eviscerate the
> AEDPA's statute of limitations.  Leave to file a late notice of appeal can be sought
> at any time, even many years after conviction.  If the one-year period of limitations

---

[6]A criminal defendant has ninety days following the entry of judgment by the "state court of last resort" in
which to file a petition for writ of certiorari.  Sup. Ct. R. 13.

did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief.  The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

*Id.* at 519 (quoting *Raynor v. Dufrain*, 28 F.Supp.2d 896, 898 (S.D.N.Y. 1998)).

At the same time, *Searcy* noted that "[t]his court has recently made clear, however, that even a Rule 26(B) application, though part of the direct appeal process, will not delay the starting of the statute of limitations."  *Id.* at 519-20 (citing *Bronaugh*, 235 F.3d at 285).  Thus, although *Searcy* constitutes binding precedent with respect to non-Rule 26(B) delayed appeals, like *Bronaugh*, it is otherwise irreconcilable with *White*'s holding that 26(B) applications are part of direct review.

Finally, in *Miller*, we remarked:

In our view, there are two ways to read *Bronaugh*.  The first, which is the State of Ohio's position in this case, is that a Rule 26(B) application is technically part of the direct review process, but in effect, it functions as a collateral attack because it only tolls the statute of limitations during pendency, it does not affect the conclusion of direct review and thus does not postpone the initial running of the one-year limitations period.  The other possible interpretation is that because a Rule 26(B) application is part of the direct review process, a conviction does not become final pursuant to section 2244(d)(1)(A) until the Ohio courts dispose of a petitioner's Rule 26(B) application.  Thus, a timely application does not merely toll the statute of limitations, the limitations period does not begin to run until its conclusion.

*Miller,* 305 F.3d at 494 (footnote omitted).  Notwithstanding, *Miller* avoided the problem by ruling that Miller's petition was timely under either interpretation of Rule 26(B) based on equitable tolling.  *Id.* at 495.

Needless to say, *White's* holding that Rule 26(B) applications to reopen are part of direct review has led to tension and confusion in subsequent opinions in this Circuit.  Our decisions in *Bronaugh, Searcy,* and *Griffin*, although paying lip-service to *White*, are in direct conflict with it.  Further, in reaching the conclusion it did, the *White* court overstated the holding of *Murnahan*.  *Murnahan* "merely held that these challenges cannot be brought in trial court *pursuant to R. C. § 2953.21,* but must be brought in appellate court *under Rule 26.*"  *Lambert v. Warden*, No. 01-3422, 2003 WL 22071466, at *8 (6th Cir. Sept. 2, 2003) (footnoted omitted).  In other words, *Murnahan* was exclusively concerned with the proper court in which to bring such challenges.  Nothing in *Murnahan* suggested how such challenges, properly made, were to be characterized.  Our decisions in *Bronaugh*, *Searcy*, and *Griffin*, as well as our observations in *Miller,* reflect the concerns that *White* was incorrectly decided, both because it misread state law and because its holding is at odds with the structure and function of the AEDPA, which suggests Rule 26(B) applications should be considered as collateral, rather than direct, review.

In any event, as to the interpretation of state law, the Ohio Supreme Court recently decided, on a certified question from a district court, that the Rule 26(B) procedure is collateral post-conviction review.  *See Morgan v. Eads*, 818 N.E.2d 1157, 1158 (Ohio 2004) (syllabus).  The Ohio Supreme Court explained that Rule 26(B) was adopted in the wake of its decision in *Murnahan*, which was based on the Court's view that claims of ineffective assistance of appellate counsel should be decided in the appellate court where the alleged error occurred, because "'appellate judges are in the best position to recognize'" whether a criminal defendant has received effective assistance of appellate counsel.  *Id.* (quoting *Murnahan*, 584 N.E.2d at 1204).  This was because allowing such

claims to be filed in the state trial courts, like other postconviction claims raised pursuant to Ohio Rev. Code § 2953.21, "'could in effect permit trial courts to second-guess superior appellate courts.'" *Id.* (quoting *Murnahan*, 584 N.E.2d at 1204). Therefore, "[the Court's] reasoning in *Murnahan* concerned the appropriate court in which to bring a collateral challenge to the effectiveness of appellate counsel," and did not intimate that such a challenge was part of the initial appeal. *Id.*

Because *Murnahan* highlighted the lack of statutory authority or court rules to allow defendants to raise such claims, Rule 26(B) was adopted "to provide for a specialized type of postconviction process," to allow criminal defendants to raise claims of ineffective assistance of appellate counsel. *Id.* The *Morgan* court concluded:

> An application under App. R. 26(B), whether successful or not, was never intended to constitute part of the original appeal. Creating this remedy in the *Murnahan* decision, and then codifying the remedy in App. R. 26(B), does not affect its status as a postconviction remedy. Moreover, simply initiating the App. R. 26(B) remedy by an application in the court of appeals, instead of the trial court, does not alter its status as a collateral postconviction remedy. An application for postconviction relief under R.C. 2953.21 is not part of the original trial simply because it begins in the trial court, and an App. R. 26(B) application is not part of the original appeal simply because it was filed in the court of appeals.

*Id.* at 1158-59.

The *Morgan* court offered several reasons in support of its conclusion that Rule 26(B) is properly characterized as part of postconviction review rather than the direct appeal process. First, the application process under 26(B) requires an applicant to submit additional material not in the trial court record to support claims that appellate counsel was ineffective, similar to the process followed when a postconviction petition is filed in a trial court, as in the case of petitions filed under Ohio Rev. Code 2953.21. *Id.* at 1159 (citing App. R. 26(B)(2)(d) ("sworn statement of the basis for the claim"); 26(B)(2)(e) ("supplemental affidavits upon which the applicant relies"); App. R. 26(B)(8) (if necessary, an "evidentiary hearing may be conducted by the court or referred to a magistrate")). By contrast, an appeals court is limited to the record of the proceedings at trial. *Id.* Second, like the state trial court presented with a postconviction petition, the court of appeals has jurisdiction to consider an application under App. R. 26(B) even though an appeal is pending before the Ohio Supreme Court. *Id.* at 1159-60 (citing S. Ct. Prac. R. II(2)(D)(1) ("After an appeal is perfected from a court of appeals . . . , the court of appeals is divested of jurisdiction, except . . . to rule on an application timely filed . . . pursuant to App. R. 26") and Ohio Rev. Code § 2953.21(C) ("The court shall consider a petition . . . even if a direct appeal of the judgment is pending")). In contrast, an Ohio court of appeals lacks jurisdiction to alter or amend judgment if the case is pending in the Ohio Supreme Court. *Id.* at 1159.

Third, as with postconviction review, the underlying decision remains in effect while the Rule 26(B) application is under consideration. Further, under Rule 26(B)(7), the court of appeals "may limit its review to those assignments of error and arguments not previously considered" such that the appeal process is not started all over again. *Id.* at 1160. Similarly, a petition under Ohio Rev. Code § 2953.21 is not the equivalent of a new trial. *Id.* Fourth, the *Morgan* court remarked that "[a]n App. R. 26(B) proceeding represents an attack on the outcome of that appeal, not a part of the appeal." *Id.* Similarly, a postconviction petition filed in an Ohio trial court under Ohio Rev. Code § 2953.21 represents an attack on the judgment of the trial court and is not part of the original trial. *Id.*

The *Morgan* court acknowledged that if it *grants* an application to reopen, Rule 26(B)(6)(a) directs the court to "appoint counsel to represent the applicant if the applicant is indigent and not currently represented." *Id.* However, it noted that this provision of the rule, "like the rest of App.

R. 26(B)–is not . . . compelled by the United States Constitution.” *Id.* Rather, Ohio has chosen “to create an additional and collateral opportunity for raising ineffective-appellate-counsel claims after the appeal as of right is finished,” and “only for an indigent defendant who raises a ‘genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.’” *Id.* at 1160-61 (quoting App. R. 26(B)(5)).

In further support, the Ohio Supreme Court noted that the United States Supreme Court has declined to extend the right to counsel beyond the first appeal of right, *id.* at 1161 (citing *Coleman v. Thompson*, 501 U.S. 722, 756 (1991)), and that such a right was not found in the United States Constitution. *Id.* (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Likewise, the Ohio Supreme Court has never recognized the constitutional right to a second appellate counsel. *Id.*[7]

Furthermore,

> [t]he fact that Ohio has created this special postappeal opportunity to challenge an appellate judgment does not change Ohio’s obligations under the Sixth Amendment. The procedure to appoint counsel under App. R. 26(B)(6)(a) is one that Ohio has chosen to provide to criminal defendants whose appeal as of right has ended. Ohio had no constitutional obligation to create App. R. 26(B) at all, and it has no constitutional obligation now to provide counsel to those defendants who file applications under that rule.

*Id.* Thus, the *Morgan* court “continue[d] to adhere to the position that the App. R. 26(B) process represents a collateral postconviction remedy and is not part of the original appeal.” *Id.* Significantly, the Ohio Supreme Court expressed its “respectful[] disagree[ment]” with *White*’s characterization of the Rule 26(B) process. *Id.* at 1161.

Although we are not bound by the *Morgan* decision, which is authoritative only as a matter of state law, *see Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984) (stating that it is “axiomatic that state courts are the final authority on state law” and that “[s]tate statutes mean what state courts say they mean”), many of the considerations articulated by the Ohio Supreme Court in *Morgan* are relevant to our analysis under federal law and support the conclusion that a Rule 26(B) application to reopen is part of the collateral, postconviction process rather than direct review.

As Chief Judge Boggs observed in *Lambert:*

> [T]he structure and function of AEDPA suggest that 26(B) applications should be classified as collateral, rather than direct, review. Direct review immediately follows trial, generally is constrained by tight, non-waivable time limits, and concludes with finality of judgment. Collateral review focuses o[n] the adequacy of the trial and direct review, rather than the underlying merits of the original action. As such it necessarily follows direct review. While some types of collateral review have time limits, these limits are generally looser and waivable for good cause. Also, while there is, with few exceptions, only one direct review process of a trial court verdict, there often can be multiple courses of collateral review.

---

[7]The *Morgan* court remarked:
If we were to so hold, then logically an accused would have a constitutional right to yet a third appellate lawyer to challenge the adequacy of representation of his second appellate lawyer, and so on ad infinitum. We reject such an approach precisely because the App. R. 26(B) process is not a part of the direct appeal. “[N]either the fundamental fairness required by the Due Process Clause nor the Fourteenth Amendment’s equal protection guarantee necessitated that States provide counsel in state discretionary appeals as of right.”
*Morgan*, 818 N.E.2d at 1161 (quoting *Coleman v. Thompson*, 501 U.S. at 756).

The structure of the AEDPA statute of limitation meshes with this understanding of the distinction between direct and collateral review. AEDPA sets a short statute of limitations in order to limit the inflow of federal habeas appeals. Allowing that statute to be restarted at the convenience of the prisoner would defeat that purpose. Therefore the statute is started at an early and definitive date, the conclusion of direct review. 28 U.S.C. § 2244(d)(1)(A). This is the earliest practicable date for federal habeas review, because prior to the end of direct review state courts (and the United States Supreme Court) still may correct any constitutional violations, rendering federal habeas review unnecessary. As there is only one course of direct review, the use of the definitive article *the* to describe the date the statute begins to run is appropriate. Of course, allowing the statute of limitation to run out while the prisoner is still pursuing state post-conviction remedies combined with AEDPA's exhaustion requirement would be manifestly unjust. Therefore AEDPA tolls the statute of limitation during state post-conviction proceedings. 28 U.S.C. § 2244(d)(2). Again, the language of the provision agrees with the properties of collateral attacks. As collateral attacks follow direct review, and therefore the start of the limitations period, it makes sense to speak of tolling the period. Recognizing that there can be multiple collateral attacks, the statute refers to tolling while *a* properly filed application is pending.

Under each of these criteria, 26(B) applications are more similar to collateral review than direct review. Such applications can, and given the time limits, usually will occur after the conviction has become final. Such applications, while subject to a relatively short period to proceed as-of-right, can be successfully brought at any time, provided good cause is shown. Finally, there is nothing to suggest that 26(B) applications cannot be brought successively, or that such successive petitions would necessarily be without merit, provided good cause is shown for not raising the allegations in a previous 26(B) application. Therefore 26(B) applications are best classified as parts of collateral review under AEDPA.

*Lambert*, 2003 WL 22071466 at *8-9 (footnote omitted).

We further agree with the *Morgan* court that merely because Ohio has created this additional procedure for defendants to challenge the appellate judgment, it does not follow that Ohio has a constitutional obligation to provide counsel. In any event, it should be noted that, if the application is in fact granted, Rule 26(B) requires the court to appoint counsel, if necessary. Rule 26(B)(6)(a).

In sum, the relevant state law, the distinctions between direct review and collateral review, and the structure and function of the AEDPA support the conclusion that a Rule 26(B) application to reopen is a collateral matter rather than part of direct review.[8] As such, there is no federal constitutional right to assistance of counsel at that stage. *Finley*, 481 U.S. at 555 ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions and we decline to so hold today. Our cases establish that the right to appointed counsel

_____

[8]Other circuits have reached the same conclusion. *See, e.g., Jackson v. Johnson*, 217 F.3d 360, 365 (5th Cir. 2000) (holding that "a criminal defendant has no constitutional right to counsel on matters related to filing a motion for rehearing following the disposition of his case on direct appeal"); *Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir. 1997) (rejecting the argument that defendant prisoners have a right to assistance of counsel when they file ineffective assistance of appellate counsel claims); *Bonin v. Vasquez*, 999 F.2d 425, 429-30 (9th Cir. 1993) (remarking that it would be "an absurdity" to hold that a state prisoner has in each new round of litigation a Sixth Amendment right to challenge the effectiveness of his lawyer in the preceding round of litigation). Moreover, Michigan and Tennessee expressly assign such claims to post-conviction proceedings. *See* Mich. Ct. R. 6.502 (motion for relief from judgment)*;* Tenn. Code Ann. § 40-30-204 (petition for post-conviction relief).

extends to the first appeal of right, and no further.") (citation omitted). We therefore overrule *White v. Schotten.*

The recent decision of *Halbert v. Michigan*, 125 S. Ct. 2582 (2005), does not change our conclusion. In *Halbert*, the United States Supreme Court held that Michigan may not deny appointed counsel to defendants who apply for leave to appeal to the Michigan Court of Appeals following plea-based convictions. Michigan law provided that defendants who were convicted on a guilty or *nolo contendere* plea do not have an appeal of right to the Michigan Court of Appeals but must apply for leave to appeal. *Id.* at *6. The United States Supreme Court ruled that the Michigan Court of Appeals' review of an application for leave to appeal ranks as a first-tier appellate proceeding requiring appointed counsel for indigent defendants under *Douglas v. California*, 372 U.S. 353 (1963). The Supreme Court reasoned that two aspects of the Michigan Court of Appeals' process following plea-based convictions compelled this conclusion. *Id.* at *8. First, the Michigan Court of Appeals must look to the merits of an appellant's claims in ruling on the application for leave to appeal. Second, indigent defendants pursuing review in the intermediate appellate court are frequently ill-equipped to represent themselves. *Id.* Furthermore, the Michigan Court of Appeals "sits as an error-correction instance." *Id.*

Unlike the Michigan system, every Ohio criminal defendant has an appeal of right to the Ohio Court of Appeals. OHIO CONST. art. IV, § 3. Thus, a Rule 26(B) application to reopen follows a direct review adjudication on the "merits." *See id.*[9] *Halbert* is therefore distinguishable because, as we have already established, Ohio's Rule 26(B) procedure is a collateral post-conviction remedy and not a direct appeal. Thus, the state of Ohio is not required to provide appointed counsel. *See Finley*, 481 U.S. at 555.

Accordingly, because Lopez failed to identify a constitutional right, he has not suffered an injury cognizable on habeas, and further inquiry under § 2254, as amended by the AEDPA, is unnecessary. *See Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976) (noting that nonconstitutional claims cannot be raised on collateral review unless the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice). We therefore hold that the dismissal of the petition for writ of habeas corpus was proper.

## V.

The dissent faults the majority for performing an analysis that is "irrelevant" because "[t]he question in this case is a *constitutional* one and in that vein [this Court] need not and ought not defer to the Ohio Supreme Court or to some reading of AEDPA." *Dissenting Op.* at 1. This is a mischaracterization. The only issue in this case is whether Lopez was denied his federal constitutional right to appointed counsel during the Rule 26(B) application-to-reopen process. However, as everyone agrees, the U.S. Constitution does not contain a right to appellate review of criminal convictions. But the United States Supreme Court has ruled that if a state chooses to provide such a procedure, it is obliged to provide counsel to indigent defendants in their first appeal as of right, *see Douglas*, 372 U.S. at 357, but only in the first appeal as of right. The United States Supreme Court has made equally clear that the constitutional right to counsel does not extend beyond the first appeal as of right to discretionary state appeals or for application for review in the Supreme

---

[9]In support of its assertion that relief at stage one on a Rule 26(B) application "is in the ordinary course a de facto ruling on stage two," *Dissenting Opinion* at 11, the dissent points out that the Ohio Court of Appeals has ultimately denied the appeal after granting reopening on a Rule 26(B) application in only nine cases in the last ten years. It seems to me that this fact supports the opposite conclusion–namely that the Ohio Court of Appeals screening at stage one is quite effective, because most of the cases in which the application to reopen is granted are ultimately decided in favor of the defendant. In other words, the Ohio Court of Appeals is capable of recognizing potentially meritorious ineffective-assistance-of-appellate-counsel claims because of its familiarity with the case and appellate counsel's performance during the "initial error-correction instance."

Court, *see Ross*, 417 U.S. 615-18, to state post-conviction procedures,  *Murray v. Giarratano*, 492 U.S. 1, 12 (1989); *Finley*, 481 U.S. at 556, or to state habeas, *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991).  Because the constitutional right is not found in the U.S. Constitution, but only as a creation of state law, one must look to the structure and function of the state-conferred right in order to determine whether the state procedure has constitutional implications.    Thus, initially, and ultimately, the inquiry is whether the state procedure at issue gives rise to a federal constitutional right to appointed counsel.  As noted above, although we are not bound by it, the state supreme court's characterization of the state-created procedure is not without influence.

Reliance on the structure and function of AEDPA sections 2244(d)(1)(A) and 2244(d)(2) is equally appropriate.  It is doubtful that Congress, in amending § 2254, intended that state procedures relating to habeas jurisprudence have different characterizations for purposes of statute of limitations and the underlying substantive constitutional claim. *Cf. Branch v. Smith*, 538 U.S. 254, 281 (2003) (stating that "it is, of course the most rudimentary rule of statutory construction . . . that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part"); *United States v. Freeman*, 3 How. 556, 564-65, 11 L. Ed. 724 (1845) ("The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law. . . .  If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute[.]").  The dissent offers no authority to support its position that the characterization of Rule 26(B) for purposes of answering the constitutional question can and should be different from how it is characterized for purposes of the AEDPA statute of limitations.  In short, contrary to the dissent's suggestion, there is no statutory analysis that is independent of the constitutional inquiry.

Because we conclude that the Rule 26(B) application process does not give rise to any federal constitutional right cognizable on habeas, it is unnecessary for us to determine whether the relevant state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). However, under that analysis, which the dissent utterly fails to perform, Lopez's claim fails.  At the time of the Ohio Court of Appeals' decision in May 2000, and indeed to this day, the United States Supreme Court has never held that a criminal defendant has the right to assistance of counsel to file an application to reopen a direct appeal.  As explained in *Evitts v. Lucey*, 469 U.S. 387 (1985):

> Almost a century ago, the Court held that the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors. *McKane v. Durston*, 153 U.S. 684 . . . (1894).  Nonetheless, if a State has created appellate courts as "an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant," *Griffin v. Illinois*, 351 U.S. at 18 . . . , the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution.  In *Griffin* itself, a transcript of the trial court proceedings was a prerequisite to a decision on the merits of an appeal.  *See id.*, at 13-14 . . . . We held that the State must provide such a transcript to indigent criminal appellants who could not afford to buy one if that was the only way to assure an "adequate and effective" appeal. *Id.* at 20 . . . .
>
> Just as a transcript may by rule or custom be a prerequisite to appellate review, the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits. *See Griffin, supra*, 351 U.S., at 20. . . . Therefore, *Douglas v. California, supra*, recognized that the principles of *Griffin* required a State that afforded a right of appeal to make that appeal more than a "meaningless ritual" by supplying an indigent  appellant in a criminal case with an attorney. 372 U.S., at 358 . . . . This right to counsel is limited

to the first appeal as of right, *see Ross v. Moffitt*, 417 U.S. 600 . . . (1974), and the attorney need not advance *every* argument, regardless of merit, urged by appellant, *see Jones v. Barnes*, 463 U.S. 745 . . . (1983). But the attorney must be available to assist in preparing and submitting a brief to the appellate court, *Swenson v. Bosler*, 386 U.S. 258 . . . (1967) (per curiam), and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim. *See Anders v. California*, 386 U.S. 738 . . . (1967); *see also Entsminger v. Iowa*, 386 U.S. 748 . . . (1967).

*Evitts*, 469 U.S. at 393-94.

Thus, the question becomes whether the facts of the present case are "materially indistinguishable" from the relevant Supreme Court precedent but with a different result. *See Williams*, 529 U.S. at 406. None of the foregoing cases is factually analogous, however. To begin with, only a few of those cases actually deal with access to counsel per se, and only two, *Douglas* and *Evitts*, found the right to assistance of counsel on appeal as of right. In *Douglas*, the indigent defendants were denied their request for the assistance of counsel on appeal as of right. The *Douglas* Court found that the defendants were denied equal protection of the law where their one appeal of right was decided without the benefit of counsel. The *Douglas* Court analogized to *Griffin v. Illinois*, 351 U.S. 12 (1956):

In *Griffin v. Illinois*, we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. There, as in *Draper v. Washington*, 9 L ed 2d 899 the right to a free transcript on appeal was in issue. Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. In either case the evil is the same: discrimination against the indigent. For there can be no equal justice where the kind of an appeal a man enjoys "depends on the amount of money he has." *Griffin v. Illinois, supra* . . . .

*Douglas*, 372 U.S. at 355 (internal citation omitted). Significantly, the Supreme Court limited its holding as follows:

We are not here concerned with problems that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court. We are dealing only with the *first appeal*, granted as a matter of right to rich and poor alike . . . from a criminal conviction.

*Douglas*, 372 U.S. at 356.

In *Evitts*, 469 U.S. 387, the defendant's retained counsel filed a timely notice of appeal but failed to file the statement of appeal as required by the state rule of appellate procedure when he filed the brief and record on appeal, resulting in dismissal of the appeal. Thus, the issue in *Evitts* was whether the Due Process Clause of the Fourteenth Amendment guarantees the criminal defendant the right to the *effective* assistance of counsel on his first appeal as of right. The Supreme Court held that a State cannot penalize a criminal defendant by dismissing his first appeal as of right based on his appointed counsel's failure to follow mandatory appellate rules.

The Supreme Court found no right to appointed counsel in *Ross* or *Finley*. In *Ross*, the defendant was denied appointment of counsel for discretionary review, after his convictions were affirmed on his appeals of right by the state court of appeals. The *Ross* Court held that the rule of *Douglas* did *not* extend to discretionary state appeals and petitions for writ of certiorari. In *Finley*, the Supreme Court held that a state law giving prisoners assistance of counsel in collateral

postconviction proceedings did not require full procedural protections which the Constitution extends for trial and first appeal as of right. The *Finley* Court reasoned that "since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." 481 U.S. at 555.

Here, Lopez's request for appointed counsel to file an application to reopen his first appeal as of right is somewhere "beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court." *Douglas*, 372 U.S. at 356. Under the more deferential standard of review set forth in the AEDPA, it cannot be said that the Ohio Court of Appeals' decision denying the right to appointed counsel was contrary to "clearly established Federal law, as determined by the Supreme Court," because the result is not different from a case with materially indistinguishable facts.

The dissent's reliance on the recent decision of *Halbert* is misplaced. "[C]learly established Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Thus, it is not appropriate to reject the state courts' ruling on the basis of *Halbert*.[10] And, as discussed above, the case is distinguishable. In *Halbert*, as in *Douglas*, the criminal defendants had been denied counsel *on their first appeal as of right*. Thus, the "error correction" process was hampered upon first-tier review. By contrast, at the time of Lopez's application to reopen, the Ohio Court of Appeals had already reviewed Lopez's claims on the merits, with the assistance of briefing from appellate counsel. Lopez's indigent status, standing alone, does not alter the conclusion that no right to counsel exists at this stage. As noted above, the Supreme Court has never afforded unlimited access to counsel merely on the basis of indigency, and has consistently limited the right beyond the first appeal of a criminal conviction. *See Douglas*, 372 U.S. at 357 ("Absolute equality is not required; lines can be and are drawn and we often sustain them."). We are not free to redraw that line.

The dissent states that "[t]he constitutional question in this case . . . is admittedly a close call," and acknowledges that "[t]he procedures Ohio has enacted here as Rule 26(B) do not . . . clearly fall on one side of the constitutional dividing line between the direct review and collateral attack processes . . . [but] fall somewhere in the middle." *Dissenting Op.* at 5. *See also id.* at 1. Given the AEDPA's deferential standard of review, the state-court decision denying Lopez's motion for appointment of counsel does not warrant habeas relief.

In sum, as the district court held, the decision of the state appellate court denying Lopez's request for appointment of counsel was not contrary to "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## VI.

For the foregoing reasons, the judgment of the district court dismissing Lopez's petition for writ of habeas corpus is **AFFIRMED.**

---

[10]*Halbert* was before the Supreme Court on direct appeal from the Michigan Supreme Court and not under the AEDPA.

---

**CONCURRENCE**

---

R. GUY COLE, JR., Circuit Judge, concurring. The Court is correct to affirm the district court's denial of Lopez's writ of habeas corpus. This case does not present us with the opportunity to overrule *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), however, and I therefore concur only in the judgment.

I.

In *Lopez v. Wilson*, 355 F.3d 931, 933 (6th Cir. 2005), the original panel concludes that "*White* is not controlling in this case, because the *White* decision predates the AEDPA." Rather, the analysis required is a determination of whether the state court's denial of Lopez's request for the appointment of counsel to file a Rule 26(B) motion was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Lopez*, 355 F.3d at 937, 939; Maj. Op. at 4 ("The [AEDPA] governs this appeal.").

A state court decision is "contrary to" federal law, meanwhile, only if the state court arrived at a conclusion opposite to a Supreme Court holding. A decision constitutes an "unreasonable application" of federal law only if the state court correctly identified the relevant Supreme Court precedent but applied it in an objectively unreasonable manner to facts before it. *See Lopez*, 355 F.3d at 937 (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)); Maj. Op. at 4. The state court need not even evidence awareness of the relevant precedent. *See id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)); Maj. Op. at 4. If the state court's decision is neither contrary to, nor an unreasonable application of, Supreme Court precedent, the AEDPA denies to the federal habeas court the authority to issue the writ. *Williams*, 529 U.S. at 412.

As today's majority points out, "the United States Supreme Court has never held that a criminal defendant has the right to assistance of counsel to file an application to reopen a direct appeal." Maj. Op. at 24; *see also id.* at 26. Even if Lopez locates the gravamen of his complaint in the well established right to counsel on direct appeal, *see Douglas v. California*, 372 U.S. 353 (1963), the state court's decision to treat Rule 26(B) as collateral did not constitute an objectively unreasonable application of *Douglas* or any other federal law, "as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 412; 28 U.S.C. § 2254(d)(1). At worst, the state court's decision was contrary to Sixth Circuit precedent. Thus, nothing has changed since my concurrence in *Lopez*, 355 F.3d at 942.[1]

II.

This is a straightforward AEDPA case. Yet because the majority would use it as a vehicle to overrule *White*, it endeavors to set up a conflict between *White* and relevant precedent. As Judge Martin points out, the conflict the majority lights upon is "manufactured." Dis. at 2.

---

[1] The procedural posture of this case also precludes me from joining the dissent. Part II of Judge Martin's analysis relies on *Halbert v. Michigan*, 125 S.Ct. 2582 (2005), a case that came to the Supreme Court on direct appeal. *See id.* at 2586. Our jurisdiction under 18 U.S.C. 2254(d)(1) is insufficiently broad to conduct an analysis under *Halbert*, which in any event came down after the state court made its decision. Moreover, the fact that "the constitutional question in this case . . . is admittedly a close call," Martin Dis. at 7, militates against the conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable.

The majority alleges that a vacated, post-AEDPA case (*Lopez*) that turns on Supreme Court precedent directly conflicts with a pre-AEDPA case (*White*) binding only in this Circuit. The majority frames the conflict as follows: *Lopez* held that "it is not clearly established under federal law that applications to reopen direct appeals are part of the direct appeal process." Maj. Op. at 2; *White* represents federal law establishing that applications to reopen are part of the direct appeal. *Id.* ("*See Lopez ... contra White*.") The majority "therefore overrule[s] *White v. Schotten*." *Id.*

Of course, as the majority elsewhere acknowledges, the *Lopez* holding concerns what is clearly established under federal law "*as determined by the United States Supreme Court*" Maj. Op. at 3 (emphasis added). *White* cannot conflict with *Lopez* because, as Circuit precedent, it has no bearing whatsoever on cases governed by the AEDPA.

Having staged a conflict, moreover, the majority only manages to show that *White* is in tension with other, Sixth Circuit case law. As Judge Rogers points out in his concurrence, this Court's decisions in *Isham v. Randle*, 226 F.3d 691 (6th Cir. 2000), *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000), and *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001), do not directly conflict with *White*. Rogers Conc.; *see also* Martin Dis. at 1. These cases characterized Rule 26(B) as collateral for purposes of the AEDPA's statute of limitations. The majority reasons that if Rule 26(B) is collateral for these purposes, it must be collateral for constitutional purposes. The majority challenges the dissent to offer evidence to the contrary. Maj. Op. at 23. Yet two of the very cases the majority cites–*Bronaugh* and *Searcy*–provide such evidence. Although it treats the Rule as collateral for purposes of the AEDPA statute of limitations, this Court still otherwise characterizes Rule 26(B) as a direct appeal. *See Bronaugh*, 235 F.3d at 285; *Searcy*, 246 F.3d at 519-20.

Ultimately, *White* faces direct conflict in but two instances: the dicta of an unpublished opinion, *see Lambert v. Warden, Ros Corr.*, 2003 WL 22071466 (6th Cir. Sept. 2, 2003), and a recent holding of the Ohio State Supreme Court. Neither are binding upon this Court. *See* 6 Cir. R. 28(g); Maj. Op. at 18-19 ("[W]e are not bound by the *Morgan* decision, which is only authoritative as a matter of state law. . . .").

III.

The majority ultimately recognizes that a straightforward AEDPA analysis does not allow it to reach *White*. The majority solves the problem by answering a constitutional threshold question of its own invention.

Having set up a conflict between *White* and an AEDPA case, having criticized *White* on the basis that it conflicted with the structure and purpose of the AEDPA,[2] and having argued that several AEDPA statute of limitations cases detract from *White*, the majority suddenly announces that the AEDPA analysis is inapposite. Maj. Op. at 22 ("[B]ecause Lopez failed to identify a constitutional right, he has not suffered an injury cognizable on habeas, and further inquiry under § 2254, as amended by AEDPA, is unnecessary."); *but see id.* at 2, 4.

In support of this twist, which flouts the structure and purpose of the AEDPA by requiring a complex discussion of Circuit law, the majority cites to a footnote in *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). The footnote says that "non-constitutional *claims* that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Id.* (emphasis added). *Stone*, decided thirty years before Congress enacted the AEDPA, nowhere holds that a constitutional claim becomes non-constitutional because it lacks merit. Accordingly, Lopez's claim that the Sixth

---

[2]The majority uses *Lambert* to support is contention that *White*, a case that was not governed by the AEDPA, was nevertheless "incorrectly decided . . . because its holding is at odds with the structure and function of the AEDPA." Maj. Op. at 15.

Amendment of the Constitution furnishes him with a right to counsel becomes no less constitutional because, as the majority bypassed AEDPA to show, the claim is wrong. *See, e.g., Norman v. United States*, 2000 WL 191846, *1 (6th Cir. Feb. 11, 2000) (unpublished order) (refusing under *Stone* to address appellant's non-constitutional breach of plea claim and then holding that appellant's "ineffective assistance claim is without merit.").

IV.

In conclusion, I disagree that *White* can be overruled on the facts before us: if the AEDPA is a narrow street, it is narrow both ways. Because *White* should continue to govern pre-AEDPA cases, I respectfully concur in the judgment.

---

**CONCURRENCE**

---

ROGERS, Circuit Judge, concurring.  I concur in the judgment.  I also concur in the majority opinion, with one qualification.  It is unnecessary to conclude that our court's decisions in *Isham*, *Bronaugh*, and *Searcy* were in direct conflict with *White v. Schotten*, and I would not do so.  While there is clearly some tension between the reasoning of *White* and that of our later statute of limitations cases, *White*'s characterization of Rule 26(B) for purposes of the constitutional right to counsel did not necessarily govern the different issue of how Rule 26(B) should be characterized for purposes of the AEDPA statute of limitations.

---

**DISSENT**

---

BOYCE F. MARTIN, JR., Circuit Judge, with whom Judges Moore and Clay join dissenting. Like Judge Rogers, I disagree with the Majority's conclusion that *Isham*, *Bronaugh*, and *Searcy* are in direct conflict with *White v. Schotten*. Moreover, I agree with Judge Rogers that the characterization of Rule 26(B) for purposes of answering the constitutional question is a different issue from how to characterize Rule 26(B) for purposes of the AEDPA statute of limitations. Judge Rogers nonetheless concurs in the judgment, thus concluding that there is no constitutional right to counsel at this stage. I cannot concur in the Majority opinion because I believe it takes the wrong analytical approach to determining the existence of a constitutional right to counsel at this stage. I cannot concur in the judgment, like Judge Rogers because, in this admittedly close case, where we are called upon to determine whether the Federal Constitution guarantees a right to counsel at this stage, I would hold that *Douglas v. California*, 372 U.S. 353 (1963) and its progeny, including *Halbert v. Michigan*, 125 S.Ct. 2582 (2005), guarantee such a right. I respectfully dissent.

**I.**

I must state at the outset that the main flaw with the Majority opinion is that the analysis is irrelevant. The Majority's main conclusion that *White v. Schotten* was "incorrectly decided, both because it misread state law and because its holding is at odds with the structure and function of AEDPA," misses the mark by a country mile. The question in this case is a *constitutional* one and in that vein we need not and ought not defer to the Ohio Supreme Court or to some reading of AEDPA.

As for the statutory question that the Majority focuses upon, it finds that *White* and its subsequent cases are in open and direct conflict. The conflict, purportedly between a holding that Rule 26(B) is part of the direct review process and the Majority's insistence that AEDPA cannot otherwise properly function is, in my opinion, manufactured. The concurrence asserts there is some tension between the cases, and this is undoubtedly true. But, it is not the sort of tension that mandates the conclusion the Majority reaches. In fact, the result of the Majority's opinion does not even logically follow from its reasoning.

The Majority appears to adopt the following analysis. First, AEDPA's statute of limitations begins to run at the conclusion of the direct appeal process. Second, Rule 26(B) provides for the reopening of a direct appeal due to ineffective assistance of counsel at the appellate stage. Third, Rule 26(B) provides that an application under Rule 26(B) must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Fourth, because AEDPA's statute of limitations cannot start until the conclusion of direct appeals, and because an application under Rule 26(B) can in some circumstances be filed at any time (provided there is good cause), if a delayed Rule 26(B) motion is considered part of the direct appeal of right, then "[t]he statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result." Maj. Op. at 9 (quoting *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001)) . Fifth, therefore, the purpose and structure of AEDPA demand that Rule 26(B) be considered a collateral attack provision such that the AEDPA statute of limitations can begin to run at the earliest possible point. Sixth, there is no right to counsel for collateral appeals. Seventh, Lopez has no constitutional right to counsel for his Rule 26(B) application. There are flaws in this reasoning beginning at step four.

Rule 26(B), as noted above, provides that an application for "reopening shall be filed in the court of appeals where the appeal was decided *within ninety days* from journalization of the appellate

judgment unless the application shows good cause for filing at a later time."   App. R. 26(B) (emphasis added).  Thus, in the ordinary course, a Rule 26(B) application must be filed within ninety days.  An application under Rule 26(B) does not extend the forty-five day time limit to file a notice of appeal with the Ohio Supreme Court.  Ohio Sup. Ct. Rule II, Sec. 2(A)(1)(a).  Whether a defendant files a Rule 26(B) application within ninety days or appeals to the Ohio Supreme Court within forty-five, neither ordinary option effectively *eliminates* AEDPA's statute of limitations.  In fact, in most cases, a Rule 26(B) application will be ruled upon prior to or near the same time the Ohio Supreme Court denies or grants certiorari.  Thus, the applicable time limits ensure that AEDPA will begin as early as possible.   The Majority reasons that because Rule 26(B) permits the filing of some applications "at a later time" for "good cause," applications may effectively be filed at any time by defendants seeking to delay the running of AEDPA's statute of limitations ad infinitum.  Finding this outcome offensive to good sensibilities, the Majority concludes that Rule 26(B) cannot possibly be a part of the direct review process.  The Majority's concerns on this front — both that applications may easily be filed late and that late applications somehow undermine the structure and purpose of AEDPA — are in reality, illusory.

First, the Ohio courts have adopted an extremely stringent standard for meeting "good cause." In fact, in *State v. Williams*, 2005 WL 1177879 (Ohio App. 8 Dist. 2005), the Court held that the "good cause" standard was not met.  Williams had advanced, as grounds for his failure to timely file within ninety days, that he did not have counsel, that he was not timely provided with the transcripts to prepare an application of error, *and* that he was mentally retarded — a fact found by the trial court. *Id.* at ¶ 4 (Despite these obstacles, once Williams was provided with the transcripts, he did file his application within ninety days).  The court found these factors irrelevant noting that "[i]t is well established that a lack of legal knowledge, lack of counsel and lack of transcripts as well as other records do not constitute good cause."  *Id.* (citations omitted).  Further, the court noted that "an applicant's assertion 'that he did not know of the remedy, that his lawyers never told him about it, and that his impaired mental abilities prevented him from learning and using the remedy' did not establish good cause for the untimely filing of an application for reopening."  *Id.*  Surely the State of Ohio may interpret its own reopening standard, but if an indigent and mentally retarded defendant with no access to the transcript or other record cannot demonstrate good cause for failure to timely file, I am not so sure there will be such a plethora of delayed Rule 26(B) applications granted by the Ohio courts that will wreak catastrophic doom upon AEDPA's statute of limitations.

Second, even if there were such a deluge of delayed Rule 26(B) applications, granted by the Ohio courts, the Majority fails to explain how this would undermine the purpose and structure of AEDPA if considered part of the direct appeal.  It seems to me to be both perfectly reasonable and also legally correct for the AEDPA statute of limitations to begin to run at the earliest point — that being following the denial of certiorari from the Ohio Supreme Court or the disposition of a timely filed Rule 26(B) motion.  Likewise, the AEDPA statute of limitations should not begin to run during the ninety days in which a timely Rule 26(B) motion may be filed.  Finally, I fail to see why it would be inappropriate to toll AEDPA's one-year statute of limitations while a delayed application is pending before the Ohio courts.

The Majority's real concern, as I understand it, is with a defendant who has failed to comply with AEDPA's one-year statute of limitations filing a Rule 26(B) application in state court and claiming that direct review is not yet complete and therefore the AEDPA statute of limitations has yet to start running.  The argument that a delayed Rule 26(B) application could re-start the AEDPA statute of limitations has already been raised and rejected by this Court. *See Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000).  Instead of letting sleeping dogs lie, however, the majority performs legal gymnastics with precedent, labels legitimate tension as direct conflict, and reaches a conclusion that reeks of form over substance.

## II.

The constitutional question in this case, unlike the statutory one, is admittedly a close call. The procedures Ohio has enacted here as Rule 26(B) do not, in my opinion, clearly fall on one side of the constitutional dividing line between the direct review and collateral attack processes. Rather, the procedures under Rule 26(B), having aspects of both direct and collateral review, fall somewhere in the middle. This Court should therefore answer the question of classification — that is, whether Ohio's Rule 26(B) is more appropriately classified with *Douglas v. California* or contrarily with *Ross v. Moffitt*, 417 U.S. 600 (1974). To do so, it is essential to review Rule 26(B) in light of *Halbert*'s analysis.

In *Halbert v. Michigan*, the Supreme Court held that "the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." 125 S.Ct. at 2586. Ohio, like Michigan, has no Federal Constitutional obligation to provide for appellate review of criminal convictions. *McKane v. Durston*, 153 U.S. 684, 687 (1894). Once a state chooses, however, to provide such a procedure, it may not "bolt the door to equal justice" to indigent defendants. *Griffin v. Illinois*, 351 U.S. 12, 24 (1956) (Frankfurter, J., concurring in judgment). In *Halbert*, the Supreme Court noted that its decisions in this area are supported by both the Equal Protection and Due Process Clauses. *Halbert*, 125 S.Ct. at 2587. "'The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs,' while 'the due process concern homes in on the essential fairness of the state-ordered proceedings.'" *Id.* (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996) (internal citations and alterations omitted)).

In concluding that Michigan's procedures are more appropriately classified with *Douglas* rather than *Ross*, the Supreme Court held that two aspects of Michigan's procedures compelled the constitutional conclusion — "First, the Michigan Court of Appeals must look to the merits of an appellant's claims in ruling on the application for leave to appeal. Second, indigent defendants pursuing review in the intermediate appellate court are frequently ill-equipped to represent themselves." *Id.* at 2590. When the Michigan Court of Appeals received an application to appeal, it could respond in several ways — including a denial of leave to appeal — all of which "necessarily entails some evaluation of the merits of the applicant's claims." *Id.* at 2591. Review by the intermediate court of appeals necessarily entails some review of the merits because intermediate courts of appeal sit as an error-correction instance. *Id.* The Michigan Court of Appeals therefore, "because it is an error-correction instance, is guided in responding to leave to appeal applications by the merits of the particular defendant's claims, not by the general importance of the questions presented." *Id.* In fact, a review of the Michigan Court of Appeals decisions revealed that it routinely cited "lack of merit in the grounds presented" as a basis for denying defendants leave to file an appeal. *Id.*

This differentiates the intermediate appellate level from the discretionary appellate level at the state's highest court or the Supreme Court of the United States. Neither state supreme courts or the Supreme Court of the United States exist merely to correct errors of the lower courts, but rather sit to address other matters of larger public import. *Id.* In Michigan, for example, the Supreme Court considers whether a case presents an "issue [of] significant public interest" or "involves legal principles of major significance to the state's jurisprudence" in exercising its discretionary authority to grant review of an appeal. *See* Mich. Ct. Rule 7.302(B)(2)-(3) (2005). Furthermore, the Supreme Court noted that generally in second-tier discretionary review, a defendant will already have had the assistance of appellate counsel. "The attorney appointed to serve at the intermediate appellate court level will have reviewed the trial court record, researched the legal issues, and prepared a brief reflecting that review and research. The defendant seeking second-tier review may also be armed with an opinion of the intermediate appellate court addressing the issues counsel raised. A first-tier review applicant, forced to act *pro se*, will face a record unreviewed by appellate counsel, and will

be equipped with no attorney's brief prepared for, or reasoned opinion by, a court of review." *Id.* at 2592.

Emphasizing the importance of appellate counsel, the Supreme Court noted that "comparable materials prepared by trial counsel are no substitute for an appellate lawyer's aid." *Id.* Moreover, "a transcript and a motion by trial counsel are not adequate stand-ins for an appellate lawyer's review of the record and legal research. Without guides keyed to a court of review, a *pro se* applicant's entitlement to seek leave to appeal to Michigan's intermediate court may be more formal than real." *Id.*

The Supreme Court then turned to an indigent defendant's probable ability to navigate the appellate waters without the assistance of counsel. There, the Court concluded that "[p]ersons in Halbert's situation are particularly handicapped as self-representatives." *Id.* at 2592-93 (noting that 68% of the state prison population did not finish high school and most lack basic literary skills and that "seven out of ten inmates fall in the lowest two out of five levels of literacy — marked by an inability to do such basic tasks as write a brief letter to explain an error on a credit card bill, use a bus schedule, or state in writing an argument made in a lengthy newspaper article."). The Court then noted the complexity of Michigan's procedures and their potential for intimidating inmates attempting to proceed without counsel and stated that "[n]avigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson, and well beyond the competence of individuals, like Halbert, who have little education, learning disabilities, and mental impairments." *Id.* at 2593. Finally, the Court noted that "Michigan's Court of Appeals would still have recourse to summary denials of leave applications in cases not warranting further review. And when a defendant's case presents no genuinely arguable issue, appointed counsel may so inform the court." *Id.* at 2594 (citing *Anders v. California*, 386 U.S. 738, 744 (1967)).

"Cases on appeal barriers encountered by persons unable to pay their own way . . . 'cannot be resolved by resort to easy slogans or pigeonhole analysis.'" *Id.* at 2587 (quoting *M.L.B. v. S.L.J.* 519 U.S. 102, 120 (1996)). This case especially requires in-depth analysis because, as I stated earlier, Ohio's Rule 26(B) does not fit neatly under either *Douglas* or *Ross*. It is my opinion, however, after reviewing Ohio's procedures, and *Douglas*, *Ross*, and *Halbert*'s constitutional considerations, that this case is more like *Douglas* and *Halbert* and more unlike *Ross*. Thus, I would hold the Due Process Clause and fundamental fairness require that Ohio appoint indigent defendants counsel at the Rule 26(B) application stage.

In this case, Lopez filed a pro se application to reopen his appeal alleging that his lawyer in his direct appeal was ineffective. The Ohio Court of Appeals denied his motion to reopen. *State v. Lopez*, No. 74096, 2000 WL 574441 (Ohio Ct. App. May 11, 2000). The court noted that "[a]n application for reopening will be granted 'if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.'" *Id.* (citing App. R. 26(B)(5)). To make the determination as to whether reopening is warranted, the court noted that it applies "the two-prong analysis found in *Strickland v. Washington*." *Id.* Thus, to succeed in reopening an appeal, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

It is clear, therefore, that the application for leave to reopen here, like the application for leave to appeal in *Halbert*, "necessarily entails some evaluation of the merits of the applicant's claims." *Halbert*, 125 S.Ct. at 2591. The particularities of Ohio's Rule 26(B) application demonstrate that the application stage is in fact a near-full-review on the merits. Rule 26(B)(5) itself requires the court to state the reasons for its denial of the application to reopen. The Ohio Court of Appeals applies the

*Strickland* standard in reviewing applications requiring the defendant to meet both prongs of the test and demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." Ohio App. R. 26(B)(5). As the court noted in Lopez's case, this requires a defendant to prove that counsel was deficient — that is, that counsel's performance fell below an objective standard of reasonableness. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). This requires a defendant, who is likely uneducated, and unable to complete basic tasks, to assess counsel's strategic choices, consult American Bar Association standards, and write a brief explaining how counsel was constitutionally deficient. If a defendant is able to complete this complicated task, he is still required to meet *Strickland*'s prejudice prong, and demonstrate that counsel's deficient performance rendered the trial unfair and the result unreliable. *See Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004) (citing *Strickland*, 466 U.S. at 687).

The fact that a defendant must demonstrate prejudice further confirms that a Rule 26(B) application goes to the merits. To succeed, a defendant must show that because of appellate counsel's failure to point out some errors at the trial level, the *trial* and its outcome were unfair. Appellate counsel is not ineffective by failing to raise an issue that is unlikely to warrant relief in the form of a new trial or even outright release. Thus, in ruling on a Rule 26(B) application, the Ohio Court of Appeals necessarily is ruling on the merits of the defendant's underlying claims.

This is further evident by the application of Rule 26(B) in practice. The difference in the Ohio Court of Appeals standards at the stage one of Rule 26(B) where it applies the *Strickland* standard to determine whether the defendant has demonstrated deficient performance and raised a "genuine issue" or "colorable claim" as to his entitlement to relief, and its application of the *Strickland* standard at stage two of Rule 26(B) where the appeal is reopened and the issue is whether the defendant has demonstrated deficient performance and a "reasonable probability" that he was prejudiced is in my opinion, a distinction without a difference. Moreover, in my research, I uncovered only nine cases in the last ten years where the Ohio Court of Appeals granted reopening on a Rule 26(B) application but then ultimately denied the appeal.[1] It appears to me that relief at stage one of Rule 26(B) is in the ordinary course a de facto ruling on stage two. Therefore, while Rule 26(B) is not exactly like the procedures in *Halbert*, because *Halbert* dealt purely with a first-tier appeal, Rule 26(B) is similar in that it requires the intermediate court of appeals to render a ruling on the underlying merits of the defendant's appeal.

Ohio's Rule 26(B) is also more appropriately aligned with *Douglas* and *Halbert* than *Ross*, because the reasons why the Due Process Clause requires the state to provide counsel at the first-tier appellate review stage but not the second point in favor of requiring counsel at stage one of Ohio's Rule 26(B). First, the Ohio Court of Appeals sits as an error-correction instance. Thus, Rule 26(B) applications and their review is not discretionary. If an error was made the Ohio Court of Appeals corrects it. It does not deny Rule 26(B) applications that fail to raise constitutional issues of great importance or resolution of which are not important to the state's jurisprudence. Second, one of the main reasons supporting the Supreme Court's decision in *Ross* was that "a defendant who had already benefitted from counsel's aid in a first-tier appeal as of right would have, 'at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case.'" *Halbert*, 125 S.Ct. at 2587 (quoting *Ross*, 417 U.S. at 615).

---

[1]*See State v. Sampson*, 2003 WL 1735223 (Ohio Ct. App. Mar. 31, 2003); *State v. Collins*, 2002 WL 31002797 (Ohio Ct. App. Sept. 3, 2002); *State v. Adkins*, 2002 WL 1773153 (Ohio Ct. App. July 24, 2002); *State v. Bachtel*, 2002 WL 985474 (Ohio Ct. App. May 10, 2002); *State v. Kenney*, 2000 WL 699673 (Ohio Ct. App. May 10, 2000); *State v. Sleppy*, 1999 WL 115084 (Ohio Ct. App. Mar. 5, 1999); *State v. Moore*, 1998 WL 751453 (Ohio Ct. App. Oct. 23, 1998); *State v. Blackburn*, 1996 WL 570869 (Ohio Ct. App. Sept. 26, 1996); *State v. Robbins*, 1996 WL 363556 (Ohio Ct. App. June 12, 1996).

This is not so for a defendant seeking relief in a Rule 26(B) application to reopen. Implicit in the Supreme Court's opinion in *Ross* is the assumption that appellate counsel was effective. Moreover, in discretionary appeals to a state supreme court or the Supreme Court of the United States, an appellant may only raise issues that were already raised on appeal. In the Rule 26(B) context, however, a defendant necessarily may only raise issues that were *not* already raised on appeal. That is, the defendant is raising issues that are new because appellate counsel failed in the first instance to raise them. Thus, the defendant will not be armed with a transcript, record, brief, or opinion that addresses any of his claims.**2** Further, the vast majority of applications under Rule 26(B) are asserting appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness. This means that in most situations, a defendant's Rule 26(B) application is started from scratch and must assert error that has not been raised or researched by *any* counsel or ruled upon by *any* court.**3** In fact, Rule 26(B)(2)(c) itself belies the Majority's characterization, for it specifically states that a defendant's application is limited to "[o]ne or more assignments of error or arguments in support of assignments of error *that previously were not considered on the merits in the case by any appellate court* or that were considered on an incomplete record because of appellate counsel's deficient representation." Ohio App. R. 26(B)(2)(c) (emphasis added).

Furthermore, the same issues regarding an indigent defendant's inability to adequately address legal matters in the appellate process raised in *Halbert* are true for the defendants in Ohio. And, like the leave to appeal application in *Halbert*, the leave to reopen application in Rule 26(B) is complex and "may intimidate the uncounseled." *Halbert*, 125 S.Ct. at 2593. A Rule 26(B) application requires the following:

> (2) An application for reopening shall contain all of the following:
>
> (a) The appellate case number in which reopening is sought and the trial court case number or numbers from which the appeal was taken;
>
> (b) A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.
>
> (c) One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;

---

**2**The Majority opinion asserts the very opposite. According to the Majority, "a defendant seeking review under Rule 26(B) has already had the assistance of counsel, 'who will have reviewed the trial court record, researched the legal issues, and prepared a brief reflecting that review and research." The Majority's position, in order to support this assertion, necessarily must be that all Rule 26(B) applications are meritless — they must be if a defendant has already had this assistance. Of course this is not so. The Majority may respond that my position implies that all Rule 26(B) applications are meritorious. This is not so either. My position merely recognizes that a defendant with a meritorious position will not have had the benefit of effective appellate counsel like *Ross* and the Majority presume. In those situations where a defendant does not have a meritorious claim, appointed counsel may simply file an *Anders* brief and withdraw, and the Ohio Court of Appeals would retain the authority for summary denials.

**3**The Majority further strains to align Rule 26(B) with *Ross* when it states that in addition to already having appellate counsel, a defendant will have already been before the court which "will be familiar with the record, having already examined it albeit for other, errors, during the direct appeal." Surely this can't be so. The function of an appellate court is not to review the record on appeal for any and all errors whatsoever. The function of an appellate court is to review those errors asserted by the appellant. If the Majority would chastise a court, as I'm certain it would, for reaching and ruling upon issues not before it, I find it a bit much for the Majority to use a court's earlier review of a case for different issues, against a defendant in this context.

(d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record;

(e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.

(3) The applicant shall furnish an additional copy of the application to the clerk of the court of appeals who shall serve it on the attorney for the prosecution. The attorney for the prosecution, within thirty days from the filing of the application, may file and serve affidavits, parts of the record, and a memorandum of law in opposition to the application.

(4) An application for reopening and an opposing memorandum shall not exceed ten pages, exclusive of affidavits and parts of the record. Oral argument of an application for reopening shall not be permitted except at the request of the court.

(5) An application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.

Ohio App. R. 26(B). There can be no doubt these procedures are complex for those who have completed four years of college and three years of law school; they must be insurmountable for the seventy-percent of defendants who did not complete high school and lack basic literary skills. Finally, like *Halbert*, Ohio does have an interest in reducing the workload of its judiciary, but even if, as I believe the Federal Constitution requires, the state were required to appoint counsel, its court of appeals "would still have recourse to summary denials of leave applications in cases not warranting further review," *Halbert*, 125 S.Ct. at 2594, and appointed counsel who discovers no merit to a Rule 26(B) application may so advise the client and if the client wishes to proceed, may file Ohio's equivalent of an *Anders* brief.

In light of the foregoing factors, while Ohio's Rule 26(B) is not as easily categorized as Michigan's procedures in *Halbert*, *all* of the factors considered by the Supreme Court in that case point me in the direction of concluding that there is a constitutional right to counsel at this stage of proceedings.

### III.

In conclusion, I would hold that the Federal Constitution guarantees indigent defendants appointed counsel at state expense to assist in preparing Rule 26(B) applications to reopen their appeal. I would not find *White v. Schotten* and our subsequent cases in direct conflict and I do not believe that any tension that exists between them mandates the conclusion the Majority reaches. Moreover, in respectful disagreement with the Majority and the Ohio state courts, a state's characterization of its procedures does not control its characterization for federal constitutional purposes. Therefore, I disagree with the Majority's conclusion that *White* was "incorrectly decided, both because it misread state law and because its holding is at odds with the structure and function of AEDPA." While I dispute the Majority's conclusions on both those points, even if the Majority were correct, it simply does not matter in light of the Constitution's requirements. In that sense, *White v. Schotten* misread state law no more so than did *Douglas v. California* and *Halbert v. Michigan*.