GILMAN, J., delivered the opinion of the court, in which BATCHELDER, C.J., BOGGS, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, and KETHLEDGE, JJ., joined. MARTIN, J. (pp. 538^2), delivered a separate opinion concurring in part and dissenting in part, in which STRANCH, J., joined. MOORE, J. (pp. 542-48), delivered a separate dissenting opinion, in which COLE and CLAY, JJ., joined.
OPINION
RONALD LEE GILMAN, Circuit Judge.
Tony Davis was convicted by a Michigan jury of aiding and abetting a carjacking and of receiving and concealing stolen property. He filed an application for leave to appeal his conviction with the Michigan Court of Appeals and the Michigan Supreme Court. Both courts denied Davis’s application for lack of merit. Davis then sought a writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, to challenge his state-court conviction for aiding and abetting a carjacking. The district court denied Davis habeas relief. A prior panel of this court reversed the judgment of the district court, but the full court vacated the panel decision and set the case for rehearing en banc.
We now consider the two grounds for relief that Davis raises in his habeas petition: (1) that there was insufficient evidence to support his conviction for aiding and abetting a carjacking, and (2) that his trial counsel was ineffective in refusing to call Marco Washington, who had already pled guilty to the actual carjacking, as a witness. For the reasons set forth below, we AFFIRM the judgment of the district court.
I. BACKGROUND
In denying Davis’s petition for a writ of habeas corpus under 28 U.S.C. § 2254, the district court provided the following summary of the relevant facts:
Petitioner’s convictions arise out of a carjacking that occurred in the parking lot of a restaurant in Detroit, Michigan.
Clarence Franklin testified that, on March 27, 2002, at approximately 10:00 p.m.’, he stopped at the China One Restaurant, along with his fiancee Yvonne Depriest and 12-year-old daughter, Brittany Johnson. Franklin parked his Lincoln Navigator. He and his daughter went into the restaurant to get food and Depriest remained in the vehicle. After waiting for approximately ten minutes, Franklin got his food and left the restaurant. As he was leaving, he saw Petitioner enter the restaurant.
Franklin testified that Brittany sat in the backseat of the vehicle and he got into the driver’s seat. As he closed his door, Marco Washington approached the vehicle and ordered Franklin to [] exit the vehicle. Washington pointed a .9-mm weapon at Franklin and again ordered him out of the vehicle. Franklin, Brittany and Depriest exited the vehicle. Washington drove the vehicle to the *529 front of the restaurant. Petitioner exited the restaurant and got into the passenger seat of the Navigator. The Navigator was then driven from the parking lot.
Franklin’s vehicle was located approximately two hours later. Franklin later identified Washington as the man with the gun and Petitioner as the person he saw inside the restaurant.
Yvonne Depriest testified that she waited in the Navigator while Franklin and Brittany went into the restaurant. She observed a gray Chevrolet Cavalier enter the parking lot. She saw someone exit the vehicle and enter the restaurant. When Franklin and Brittany returned to the car, Depriest heard someone cock a gun and demand that they exit the vehicle. They all exited the ear. She testified that Petitioner then exited the restaurant and got into the passenger side of the vehicle.
Brittany Johnson testified that, as she and her father were waiting for their food, Petitioner entered the restaurant and asked for a glass of water. She identified Washington as the man who forced them out of their vehicle at gunpoint, and identified Petitioner as the man who entered the vehicle before it drove way.
Police Officer Scott Konczal of the Detroit Police Department testified the [sic] he and his partner responded to a call that someone had observed men stripping a Navigator on Novara Street in Detroit. Officer Konczal testified that he and his partner approached a garage located behind a vacant home. A man who the officers believed to be a lookout yelled something into the garage and fled. He was later apprehended and identified as Anthony Johnson. Officer Konczal saw a second person run from the garage. He gave chase and apprehended Marco Washington. Officer KonczaJ’s partner arrested Petitioner inside the garage. The key to the Navigator was found in Washington’s pocket.
Davis was originally charged in an Information with armed robbery and carjacking, to which he pled not guilty. After the close of evidence, the Information was amended to include an additional count of receiving and concealing stolen property valued at over $20,000. The state of Michigan tried Davis for the carjacking under an aiding-and-abetting theory. Davis did not testify in his own defense, and his defense counsel decided not to call Washington to testify despite Davis’s request that Washington be called as a witness. The jury convicted Davis of carjacking and of receiving and concealing property valued at over $20,000, but found him not guilty on the armed-robbery charge.
After trial, with the help of newly appointed counsel, Davis moved the state trial court to dismiss his conviction on the bases that (1) there was insufficient evidence to support his conviction for aiding and abetting a carjacking, and (2) his trial counsel was constitutionally ineffective in refusing to call Washington as a witness. In an affidavit supporting his ineffective-assistance-of-counsel claim, Davis stated his belief that Washington would admit to being the sole perpetrator of the carjacking and that Davis was not involved in the offense.
The state trial court denied Davis’s motion. It reasoned that
[t]he evidence viewed in a light most favorable to the prosecution is sufficient to find that Defendant aided and abetted in the carjacking. Defendant arrived in the same car with the perpetrator, went into the restaurant and only ordered a cup of water while another man took the car at gunpoint. Defendant immediately got into the stolen vehicle and two and a half hours later was found disman *530 tling it in a garage on the eastside of town. It is a reasonable inference from the undisputed evidence that Defendant preplanned his role in the carjacking thereby satisfying the intent element of aiding and abetting a carjacking.... The fact that Defendant deliberately got into the stolen vehicle and not the car in which he arrived indicates more than just mere presence and circumstance.
The court also denied Davis’s claim that his trial counsel was ineffective, concluding that Davis had failed to show that “but for” his counsel’s failure to call Washington, Davis “would have had a more positive outcome at trial.”
Davis petitioned the Michigan Court of Appeals for leave to file an appeal on essentially the same bases that he presented to the trial court in support of his motion to dismiss his conviction. His request to appeal was denied in a one-sentence order. He next sought leave to appeal to the Michigan Supreme Court on the same grounds. That court also denied his request in a one-sentence order. Davis then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan, raising the same grounds for relief that he had presented in state court. The district court issued an opinion and order denying his petition. Davis now appeals that decision.
II. ANALYSIS
A. Standard of review
We review the district court’s legal conclusions in a habeas proceeding de novo and its factual findings under the dear-error standard. Awkal v. Mitchell, 613 F.3d 629, 638 (6th Cir.2010) (en banc). Our review of the Michigan state-court decisions in this case is governed by the following standards set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d):
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
Section 2254(d) creates a “ ‘highly deferential standard for evaluating state-court rulings,’ which demands that state-court decisions be given the benefit of the doubt.” Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (quoting Lindh v. Murphy, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). A state-court decision is contrary to clearly established federal law only “if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Brown v. Palmer, 441 F.3d 347, 350 (6th Cir.2006) (quoting Williams).
“Under the ‘unreasonable application’ clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner’s case.” Williams, 529 U.S. at 413, 120 S.Ct. 1495. “[A] federal habeas *531 court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.” Id, at 411, 120 S.Ct. 1495.
In addition, the factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). “[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.” Ayers v. Hudson, 623 F.3d 301, 308 (6th Cir.2010) (brackets omitted) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).
Under AEDPA, we review the last state-court decision to reach the merits of the particular claims being considered. Johnson v. Bagley, 544 F.3d 592, 599 (6th Cir.2008). The Michigan trial court was the last state court to reach the merits of both Davis’s sufficiency-of-the-evidence and ineffective-assistance-of-counsel claims.
B. Sufficiency of the evidence
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court set forth the standard for challenges based on sufficiency of the evidence, holding that “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781 (emphasis in original). The Jackson v. Virginia standard “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Id. This standard is applied “with explicit reference to the substantive elements of the criminal offense as defined by state law.” Id. at 324 n. 16, 99 S.Ct. 2781. And because both the Jackson v. Virginia standard and AEDPA apply to Davis’s claims, “the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact’s verdict, as contemplated by Jackson; second, deference should be given to the Michigan [trial court’s] consideration of the trier-of-fact’s verdict, as dictated by AEDPA.” See Tucker v. Palmer, 541 F.3d 652, 656 (6th Cir.2008).
To convict Davis of aiding and abetting the carjacking, the state of Michigan had to prove beyond a reasonable doubt that
(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended it when the defendant gave aid or encouragement.
Brown, 441 F.3d at 351 (citing People v. Carines, 460 Mich. 750, 597 N.W.2d 130, 135 (1999)). “The phrase ‘aiding and abetting’ includes all words or actions by the defendant that might support, encourage, or incite the commission of the crime.” Id. (citing People v. Palmer, 392 Mich. 370, 220 N.W.2d 393, 397 (1974)). “An aider and abettor’s state of mind may be inferred from all the facts and circumstances.” Carines, 597 N.W.2d. at 135 (internal quotation marks omitted) (holding that “[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime” (internal quota *532 tion marks omitted)). “ ‘Factors that may be considered [in determining intent] include a close association between the defendant and the principal, the defendant’s participation in the planning or execution of the crime, and evidence of flight after the crime.” Id. (internal quotation marks omitted). “But mere presence, or even knowledge, that a crime is about to be committed is insufficient to prove guilt under an aiding-and-abetting theory.” Brown, 441 F.3d at 351 (citing People v. Wilson, 196 Mich.App. 604, 493 N.W.2d 471, 476 (1992)).
The evidence introduced at trial showed that (1) Davis arrived at the restaurant where the carjacking took place with Washington and an unidentified third person in a Chevrolet Cavalier; (2) Davis entered the restaurant while two of the victims were inside; (3) Washington stood outside the restaurant while the third person stayed in the Cavalier; (4) Davis did not order any food, but rather asked for a cup of water; (5) after the two victims inside the restaurant left to enter, their Lincoln Navigator SUV and join a waiting passenger, Washington ordered all three of the victims out of the vehicle at gunpoint; (6) Davis stood at the window inside the restaurant while the carjacking was occurring; (7) Washington drove the stolen SUV a few feet toward the restaurant and stopped, at which point Davis immediately walked out and hopped into the SUV; (8) Washington then drove away from the scene with Davis as a passenger; (9) the third person who was in the Cavalier drove off after them; (10) roughly two-and-a-half hours later, Davis, Washington, and one other man were caught stripping the SUV in a dilapidated garage behind an abandoned house; (11) Davis was found lying flat on his back in the garage, working underneath the stolen SUV when the police arrived; and (12) the Cavalier in which Davis and Washington drove to the restaurant and that was seen trailing the SUV from the restaurant was found near the garage.
Davis argues that this evidence permits nothing more than speculation that he played a role in the carjacking itself or that he had the requisite criminal intent. He asserts that “[t]hese facts established, at most, acquiescence and after-the-fact assistance, neither of which suffices for a conviction.” Davis specifically relies on Brown v. Palmer, 441 F.3d 347 (6th Cir.2006), to support his argument that the Michigan trial court’s conclusion to the contrary was an unreasonable application of the Jackson v. Virginia standard.
In Brown, this court held that there was insufficient evidence to find the defendant guilty of aiding and abetting a carjacking. Id. at 351-53. The evidence in Brown showed that (1) Brown was parked in a car at a gas station; (2) the perpetrator exited the gas station’s store and entered Brown’s car for an unstated but apparently very brief period of time; (3) Brown then pulled forward to a gas pump and the perpetrator exited Brown’s car; (4) the perpetrator immediately pointed a gun at a man attending to a Buick sedan, fired his gun in the direction of the man as the latter ran away, then entered the Buick and drove off; (5) Brown watched this occur from the driver’s seat of his car, after which he attempted to drive off himself, but his. tires skidded in the snow; (6) the Buiek’s owner, who had been walking from the gas station’s store toward his car when the carjacking occurred, ran over to Brown’s car and punched Brown in the face; (7) Brown immediately told the Buick’s owner that he had just met the perpetrator a few minutes before and had simply offered to give him a ride; (8) aided by a friend, the Buick’s owner grabbed Brown, pulled him from the car, and drove it to a police station to file a report; (9) Brown failed to retrieve his car after- *533 wards; and (10) the perpetrator was never apprehended. Id. at 349.
Davis’s reliance on Brown is misplaced because the factual differences between these two cases are material. First, there was no evidence that Brown arrived at the scene with the perpetrator. Brown in fact claimed that he had just met the man a few minutes earlier, presumably at the gas station itself. Here, Davis arrived at the scene with Washington, raising a compelling inference that they were previously acquainted.
Second, the behavior of Brown and Davis before and during the carjacking differed significantly. Brown engaged in no overt acts to indicate that he was involved in the crime. He simply sat in his car and watched the crime unfold in front of him, to his professed shock and dismay. Davis, on the other hand, exited the Cavalier with Washington, entered the restaurant, failed to order any food, and stood at the window. Davis would have had no other way of so closely coordinating his actions with those of Washington if he had not been actively watching what was taking place. In short, Davis’s behavior during the crime was far closer to that of a coconspirator than Brown’s.
Another key difference between this case and Brown is that Davis fled the scene in the stolen vehicle. Because Davis arrived at the crime scene in the Cavalier, and the Cavalier subsequently followed the carjacked SUV, he could just as easily have departed in the same car. Davis instead purposely chose to enter the SUV that he had just seen his companion carjack.
For Brown to control the outcome in this case, Brown would have needed to arrive at the gas station with the perpetrator, watch the carjacking occur, and then enter the stolen Buick to drive off with the perpetrator. The fact pattern here is far more incriminating because it indicates that Washington was expecting Davis to enter the SUV (without any contemporaneous communication between them) that Washington had just stolen. The jury could easily conclude from this evidence that Davis was involved in the planning and execution of the carjacking. In contrast, the perpetrator in Brown did not wait for Brown to enter the carjacked Buick, did not drive it towards Brown, and did nothing after the crime to indicate that the two were working in tandem.
Another difference here is the lack of any proof to refute the circumstantial evidence that Davis and Washington were previously acquainted. Brown, in contrast, denied any advance knowledge about the carjacking and denied even knowing the perpetrator until they met at the gas station. Furthermore, Brown made these denials immediately after the crime and thus had little time to fabricate an exculpatory story.
Finally, Davis and Washington were found breaking down the stolen SUV shortly after the carjacking. Although this act by itself does not constitute aiding and abetting the carjacking, the overall sequence of events greatly strengthens the circumstantial case against Davis. Pieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case. See United States v. Welch, 97 F.3d 142, 150-51 (6th Cir.1996) (concluding that the circumstantial evidence “in its totality” was sufficient to find the defendant guilty beyond a reasonable doubt). Together with the other circumstantial evidence, the fact that Davis and Washington were continuously together from the time that they arrived at the scene of the carjacking until they were caught stripping the SUV — essentially sharing in the proceeds of the crime — is strong evidence of Davis’s aiding and abetting the carjacking. See People v. *534 Carines, 460 Mich. 750, 597 N.W.2d 130, 135 (1999) (holding that a close association between the defendant and the principal, and evidence of flight after the crime, are factors that may be considered in determining intent in an aiding-and-abetting case); People v. Allen, 201 Mich.App. 98, 505 N.W.2d 869, 871 (1993) (“Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.”).
Given the material differences between this case and Brown, and the strong circumstantial evidence that Davis served as a lookout and/or helped plan the carjacking, we find no basis to grant Davis habeas relief in light of the AEDPA deference that we are obligated to apply. The key reason for granting habeas relief in Brown was that the evidence there was deemed too speculative for a jury to find Brown guilty beyond a reasonable doubt. See Brown, 441 F.3d at 352-53. But in light of AEDPA’s deferential standard, Brown was a very close case. The present case, on the other hand, contains additional facts supporting the jury’s verdict that make the verdict a far cry from being “objectively unreasonable.” See Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (explaining that a state court’s decision must be “objectively unreasonable” to merit habeas relief); see also White v. Steele, 602 F.3d 707, 709-11 (6th Cir.2009) (distinguishing Brown and denying relief on an aiding-and-abetting, sufficiency-of-the-evidence argument).
We further note that the Jackson v. Virginia standard is so demanding that “[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.” United States v. Oros, 578 F.3d 703, 710 (7th Cir.2009) (internal quotation marks omitted). Adding to this extremely high bar are the stringent and limiting standards of AEDPA. Under AEDPA, we may reverse a state court’s decision that correctly identified and applied .the controlling Supreme Court precedent only if the application of that precedent was “objectively unreasonable,” meaning “more than incorrect or erroneous.” Wiggins, 539 U.S. at 520-21, 123 S.Ct. 2527 (citations and internal quotation marks omitted); see also Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (“It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.” (internal quotation marks omitted)).
The precise definition of “objectively unreasonable” remains elusive. Maynard v. Boone, 468 F.3d 665, 670-71 (10th Cir.2006) (discussing the failure of most federal courts to further define the phrase “objectively unreasonable” and collecting cases). Several of our sister circuits, however, have attempted to clarify the term. The First Circuit has explained that “if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application,” and that “ ‘some increment of incorrectness beyond error is required.’ ” McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir.2002) (en banc) (quoting with approval Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000)).
Taking a somewhat different tack, the Seventh Circuit has explained that a state court’s decision is sustainable under AED-PA if it “is at least minimally consistent with the facts and circumstances of the case,” Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.1997), or even “if it is one of several equally plausible outcomes,” Hall v. Washington, 106 F.3d 742, 749 (7th Cir.1997), and that a decision is objectively unreasonable only where it is “well outside the boundaries of permissible differences *535 of opinion,” Hardaway v. Young, 302 F.3d 757, 762 (7th Cir.2002); see also Mendiola v. Schomig, 224 F.3d 589, 591 (7th Cir.2000) (explaining that a state court’s decision is not unreasonable if it took the controlling standard “seriously and produce^] an answer within the range of defensible positions”). The Tenth Circuit has similarly opined that “[i]t is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision,” but instead “the state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.” Maynard, 468 F.3d at 671 (internal quotation marks omitted).
This court has not delved deeply into the issue, but one judge has indicated that where a state court makes “a close call” on a constitutional question, this “militates against the conclusion that the state court’s application of the relevant Supreme Court precedent was objectively unreasonable.” Lopez v. Wilson, 426 F.3d 339, 358 n. 1 (6th Cir.2005) (en banc) (Cole, J., concurring) (internal quotation marks omitted). Moreover, the Supreme Court has recently explained that “[w]hen assessing whether a state court’s application of federal law is unreasonable, ‘the range of reasonable judgment can depend in part on the nature of the relevant rule’ that the state court must apply.” Renico v. Lett, — U.S. -, 130 S.Ct. 1855, 1864, 176 L.Ed.2d 678 (2010) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).
Accordingly, “ ‘the more general the rule’ at issue — and thus the greater the potential for reasoned disagreement among fair-minded judges — ‘the more leeway state courts have in reaching outcomes in case-by-case determinations.’ ” Id. (brackets omitted) (quoting Yarborough, 541 U.S. at 664, 124 S.Ct. 2140). And the Jackson v. Virginia standard— requiring a court to allow for a range of rational factfinders and to view the evidence in the light most favorable to the prosecution — is exceedingly general. Foxworth v. St. Amand, 570 F.3d 414, 429 (1st Cir.2009) (concluding that Jackson v. Virginia enunciates “a general standard”); see also Wright v. West, 505 U.S. 277, 308, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring) (identifying Jackson v. Virginia as enunciating “a general standard”).
We must therefore give the Michigan trial court considerable leeway in the case before us. In light of the strong circumstantial evidence that Davis was involved in the planning and execution of the carjacking, at least one “rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” See Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. 2781; see also United States v. Algee, 599 F.3d 506, 512 (6th Cir.2010) (“Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.” (internal quotation marks omitted)).
And when this case is given “double deference” through the lens of AEDPA, so that we are limited to reviewing whether the state trial court’s decision was so objectively unreasonable as to be “beyond error,” see McCambridge, 303 F.3d at 36 (citation omitted), or “outside the boundaries of permissible differences of opinion,” see Hardaway, 302 F.3d at 762, or more than “clearly wrong,” see Maynard, 468 F.3d at 671, we are unable to say that the decision is so far out of line with the very general standard set forth in Jackson v. Virginia as to warrant granting Davis habeas relief. We therefore conclude that the state trial court’s decision to deny *536 Davis’s motion to dismiss his conviction was not objectively unreasonable.
C. Ineffective assistance of counsel
Because we have concluded that sufficient evidence was presented at trial to convict Davis of aiding and abetting a carjacking, we must now determine whether Davis’s trial counsel was constitutionally ineffective. To establish the ineffective assistance of counsel, Davis must first show that his “counsel’s performance was deficient.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This requires a showing that “counsel’s representation fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. Second, Davis must show prejudice by establishing that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. This is a high burden to meet:
Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.
Id. at 689, 104 S.Ct. 2052 (citation and internal quotation marks omitted).
Davis argues that we should review his ineffective-assistance-of-counsel claim de novo rather than under the “doubly deferential judicial review that applies to a Strickland claim evaluated under [AED-PA].” See Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009). He first asserts that the Michigan trial court applied an improper standard in analyzing his ineffective-assistance-of-counsel claim. The state trial court held that Davis had not shown that “the failure to call the perpetrator who pled guilty to the carjacking was prejudicial to the extent that but for that deficiency, Defendant would have had a more positive outcome at trial, which is necessary to overcome the presumption of trial strategy.” It relied on the Michigan case of People v. Julian, 171 Mich.App. 153, 429 N.W.2d 615 (1988), to reach this conclusion.
In Strickland, the Supreme Court held that “a defendant need not show that counsel’s deficient conduct more likely than not altered the outcome in the case” to succeed on a claim of ineffective assistance of counsel. Id. at 693, 104 S.Ct. 2052. Davis seizes upon this language and argues that this is precisely where the Michigan trial court misapplied Supreme Court precedent. He argues that we should therefore review the prejudice prong of his ineffective-assistance-of-counsel claim de novo, relying on Dyer v. Bowlen, 465 F.3d 280, 284 (6th Cir.2006) (“When the state court issues a decision that is contrary to federal law, we review the merits of the petitioner’s claim de novo.”). For the reasons set forth below, we conclude that we do not *537 need to address the prejudice prong of Davis’s ineffective-assistanee-of-counsel claim, and therefore need not decide which standard of review applies to this aspect of his claim.
Davis also argues that we should review the deficiency prong of the Strickland test de novo because the Michigan trial court did not address this prong. See Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (holding that the Supreme Court’s review was “not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the Strickland analysis”). Although the extent of the Michigan trial court’s consideration of this issue is less than clear, we will analyze the deficiency prong of Davis’s ineffective-assistance-of-counsel claim de novo because, even under that more liberal standard of review, we conclude that his counsel was not deficient.
Davis argues that his trial counsel was constitutionally ineffective in failing to call Washington as a witness, despite Davis’s request to the contrary. He asserts that Washington would have testified that Davis had no knowledge of the carjacking and that Washington acted alone. But Davis’s trial counsel explained to the state trial court why he decided not to call Washington as a witness. The trial record reads, in relevant part:
My client has asked me to call Marco Washington as a witness and you know the issue of Marco Washington. I told [Davis] I didn’t think it was a good idea to call someone that would be a codefendant in the minds of the jury who plead [sic] guilty. I think we agree on that. But more importantly, as you know, I have to tell the Prosecutor what my plans are. Ms. Dawson told me that if, in fact, Marco Washington got on the stand and in essence exculpated Mr. Davis, that she would seek — I’m not saying she would obtain, but she would send [sic] a warrant for perjury.
Also, Mr. Washington, since he hasn’t been sentence[d], still has the Fifth Amendment Right. Given that, I just want to put on the record that, in my opinion, I do not want to call Mr. Washington as a witness, and most importantly, what [sic] he realizes he has certain rights. He may exercise those rights and not testify. I don’t want to get to that point, Judge.- I just wanted to indicate that I’m not going to, as an officer of this court, call Mr. Washington.
These statements provide us insight into defense counsel’s strategic decision not to call Washington as a witness. First, he explained that he did not want the jury to associate Davis with Washington given the fact that Washington had already pled guilty to the carjacking. And in light of the prosecutor’s statement that she would seek to charge Washington with perjury if he testified on behalf of Davis, counsel was concerned that Washington would exercise his Fifth Amendment right to remain silent if called. The record thus reflects that counsel carefully considered calling Washington as a witness in Davis’s defense and made the strategic decision not to have Washington testify. “Strategic, choices- made after thorough investigation of- law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.” Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052.
Davis has not produced any evidence that defense counsel failed to adequately investigate or consider the option of calling Washington to testify. Without proof to the contrary, we must assume that counsel adequately considered the possibil *538 ity, but ultimately decided that the best strategy was not to present Washington’s testimony. See Carter v. Mitchell, 443 F.3d 517, 532 (6th Cir.2006) (holding that the defendant did not meet his burden under Strickland where he failed to produce any evidence that his counsel declined to investigate the defendant’s background before deciding not to call family members to testify during the sentencing phase).
Davis relies on Poindexter v. Booker, 301 Fed.Appx. 522 (6th Cir.2008), among other cases, to support his argument that defense counsel was ineffective. In Poindexter, this court held that counsel, the same trial counsel that represented Davis in this case, was constitutionally ineffective because he failed to investigate possible alibi witnesses. The evidence in that case showed that two alibi witnesses accompanied Poindexter to meetings with his counsel, one of whom later approached Poindexter’s counsel about the possibility of testifying on Poindexter’s behalf. Id. at 529. But Poindexter’s counsel never interviewed either witness. When asked why he failed to make use of these potential witnesses, Poindexter’s counsel responded: “I can’t honestly give you an answer to that.” Id. The court concluded that the “[f]ailure to investigate two alibi witnesses, particularly when the witnesses both personally offered to provide testimony beneficial to Poindexter, is therefore objectively unreasonable” and “not the product of sound trial strategy.” Id.
But Poindexter is distinguishable from this case. Here, defense counsel offered several strategic reasons for not calling Washington to testify, unlike his failure to offer any reasons for not interviewing potential alibi witnesses in Poindexter. Davis’s counsel did not want to link Washington, who had already pled guilty to the carjacking, with Davis. Further, counsel was concerned that Washington might choose to exercise his Fifth Amendment right to remain silent if called to testify. And unlike the possible alibi witnesses in Poindexter, who would have allegedly presented evidence that Poindexter was not even present when the crime occurred, Washington’s testimony, as the district court noted, “would do nothing to explain [Davis’s] presence at the restaurant, [Davis’s] abandoning the vehicle in which he arrived at the restaurant, or his presence at the garage where the Navigator was being stripped.”
Given the high level of deference that we must afford a defense counsel’s strategic choices, we conclude that Davis has failed to “overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (internal quotation marks omitted). He has thus failed to satisfy Strickland’s deficiency standard. Because Davis failed to make the necessary showing of deficiency, his ineffective-assistance-of-eounsel claim fails and we need not address the prejudice prong. See id. at 700, 104 S.Ct. 2052 (“Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.”).
III. CONCLUSION
For all the reasons set forth above, we AFFIRM the judgment of the district court.