NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0390n.06

No. 13-1831

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KELLY NOBLES,

  Petitioner- Appellant,

v.

JEFFREY WOODS, Warden,

  Respondent- Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
May 29, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE: DAUGHTREY, CLAY, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Kelly Nobles is a Michigan state prisoner seeking federal habeas relief based on an alleged Sixth Amendment confrontation violation that occurred during his trial for the murder of Kolby Bohannon. The state brought a number of charges against Nobles, including first-degree murder, obstruction of justice, and attempted subornation of perjury, asserting on the latter two charges that Nobles had attempted to prevent Rod Jeter, an accomplice to the shooting, from testifying. Rod Jeter gave a statement to the police identifying Nobles as the shooter but then died in an unrelated incident prior to trial. On cross-examination, Nobles denied knowledge of this statement. In response, the prosecutor sought to introduce Jeter's statement as impeachment evidence; the trial court granted this request after instructing the jury that it was not to consider the statement for its truth.

In his habeas petition, Nobles alleged that admission of Jeter's statement violated his Sixth Amendment right to confrontation. The state sought to have the court dismiss the petition as time-barred. After ruling that Nobles was entitled to equitable tolling and that his petition was therefore timely, the district court denied relief but granted a certificate of appealability as to his confrontation claim. Nobles now challenges the denial of habeas relief, and the state continues to argue that the petition was time-barred. Because we conclude that the district court's ruling on the merits was correct and must be affirmed, we decline to review the district court's ruling on the tolling issue, concluding that it is unnecessary to the resolution of this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Kolby Bohannon was killed by stray gunfire on December 31, 2000, apparently inadvertently. The State of Michigan brought a number of charges against Kelly Nobles in connection with the killing, including one count of first-degree murder. Nobles was also charged with obstruction of justice and attempted subornation of perjury, based on allegations that he had threatened and harassed Rod Jeter, an accomplice to the shooting, to provide false testimony on the events leading up to Kolby's murder.

In the early morning hours of December 31, Kolby was attacked by Randall Hall and Ladarius Edwards at the house of Rocky Bohannon, Kolby's brother. When Rocky discovered that his brother had been injured, he pulled a gun on the two men and ordered them off his property. Later that morning, brothers Rocky and Kolby met with Jeter and Nobles to search for the assailants, Hall and Edwards. The men began their search by car, with Kolby driving, Nobles sitting in the front passenger seat, and Rocky and Jeter sitting in the back seat. The same gun that had been in Rocky's possession earlier that morning was located in the trunk of the car.

Upon identifying Hall's car in the parking lot of a local restaurant, the Coney Island, Kolby drove into the lot, got out of his vehicle, and ran into the facility to confront Hall and Edwards.

Kolby was shot while running into the restaurant. The prosecution argued that Nobles, following Kolby into the building, began firing shots, one of which accidentally struck Kolby. Rocky testified that after Kolby identified Hall's car and left the car, Nobles retrieved the gun from the trunk; that he heard shots as his brother entered the restaurant; that he then saw Nobles holding the gun from the trunk; and that Nobles threw the gun away as he, Nobles, and Jeter were fleeing the scene. The prosecution also presented testimony from Candace Whaley, Jeter's girlfriend, that Nobles had later admitted to her that he shot up the restaurant in question. In response, the defense offered the testimony of various witnesses who attempted to establish that Rocky was actually the shooter.

In support of the obstruction of justice and attempted subornation charges against Nobles, the prosecution introduced Whaley's testimony that Nobles repeatedly instructed Jeter to say that Rocky was the shooter; encouraged Jeter and her to leave the state until the criminal case against Nobles ended; called Jeter a "snitch" after Jeter gave a statement to the police implicating Nobles in the shooting; and left a threatening message on Whaley's voicemail after Jeter returned from out of state. Nobles denied Whaley's testimony; he also asserted that the message was left on Whaley's phone after Jeter's death and did not concern Kolby's murder.

Prior to his death, Jeter had provided a statement to the police identifying Nobles as the shooter. After Nobles denied that the threatening message he left on Whaley's voicemail was related to Kolby's murder, the prosecution sought to introduce Jeter's statement. The following exchange surrounding the admission of the statement occurred at trial:

Q: And so everything you did to Rod Jeter about telling him what to say and what happened at the Coney Island, calling him a snitch once he told Homicide you were the one who shot the gun.

A: Roderick Jeter to my knowledge never told Homicide that I shot no gun.

. . . . .

Q: Now, you just -- sir, you just told us that you were not aware of Mr. Jeter's statement as to –

. . . . .

Q: Mr. -- Well, Mr. Nobles, you just told us that you have no idea what Rocky -- you just told us that you have no idea that Rod Jeter identified you as the person who shot at the Coney Island. Isn't that what you just told us?

A: Yes.

Q: Let's see if this refreshes your memory.

[Defense Counsel]: Objection, your Honor, to the use of the statement in the form the People intend to use it.

[Prosecutor]: Offered for impeachment, your Honor.

The Court: All right. Ladies and gentlemen, the prosecutor wants to use the statement made by a witness who's not available to testify. I already told you that Rod Jeter is not, but so this statement is not being offered for the truth of the matter asserted and you cannot use it for that purpose. Do you understand? It's not used to prove the elements of any offense. It's used to impeach the testimony of the Defendant only.

. . . . .

Q: Sir, do you remember getting this as part of your discovery?

A: Never.

Q: Okay. So you're not saying Mr. Pitts was ineffective?

[Defense Counsel]: Objection, your Honor, relevance.

Q: Okay. Do you remember reading Rod Jeter's statement?

A: From my knowledge Rod Jeter never made a statement. This happened on January 1st. He died eight months later. He has never came in and testified against me.

Q: But you called him a snitch because?

A: I never called him a snitch.

. . . . .

Q: And do you remember reading the statement of Roderick Jeter dated March the 5th, 2001 to Lieutenant Ray Nolan of the Detroit Police Department Homicide Section? Question: On the day you were at the Coney Island, how did you get there?

Answer: By Rod Jeter during his lifetime.

[Defense Counsel]: Your Honor, I've got to object.

[Prosecutor]: I'll paraphrase, judge . . . . . 'Kolby was -- Kolby was driving my car. I don't have a license. We went over after Kolby sees the guys that hit him in the head the night before. Kolby pulled into the street and jumped out and ran into the Coney Island doorway. I don't know if anyone else was – Kolby pulled into the street and jumped out and ran into the Coney Island doorway. Then I started hearing shots. Kelly was shooting. I don't know if anyone else was shooting. He was shooting at the Coney Island.' Do you remember reading that in Rod Jeter's statement?

A: Never, I never had a statement from Rod Jeter . . . . I have never, ever seen a statement from Roderick Jeter. He has never testified against me in a courtroom. At preliminary exam Roderick Jeter did not come testify against me. I don't know where you got that statement from or where you probably made it up from, but I have never seen it.

The prosecutor later questioned Lieutenant Raymond Nolan, to whom Jeter had given his statement, on whether Jeter implicated Nobles in Kolby's shooting; Nolan responded that Jeter had. During summation, the prosecution argued to the jury that the state had introduced Jeter's statement and questioned Nolan to prove that Nobles "was lying when he told you I had no reason to call [Jeter], and [Jeter] never talked to homicide." The prosecutor also observed that Rocky, Jeter, and Nobles "[a]ll . . . directly or indirectly tell you who shot at the Coney Island," and, throughout closing argument, repeated that "Jeter speaks from the grave."

The jury returned a verdict of guilty against Nobles on the count of first-degree murder and the related counts of assault, discharging and possessing a felony firearm, and carrying a concealed weapon. He was found not guilty on the charges of obstruction of justice and attempted subornation of perjury. Following his conviction, Nobles filed a motion for a new trial in the state trial court, which was denied, and a direct appeal in the Michigan Court of Appeals, which affirmed his conviction in an unreported decision. *See People v. Nobles*, No. 258353, 2006 WL 1479561 (Mich. Ct. App. May 30, 2006). The Michigan Supreme Court denied his application for leave to appeal, and Nobles did not seek *certiorari* review by the United States Supreme Court. Instead, he moved for relief from judgment in the state courts, also to no avail.

Nobles next filed a petition for habeas relief in federal district court. The state moved for summary judgment on the ground that it was filed outside of the one-year statute of limitations period, but the district court denied summary judgment after determining that Nobles was entitled to equitable tolling. Upon receipt of the state's memorandum in opposition to Nobles's petition and Nobles's reply briefing, the district court denied habeas relief and granted a certificate of appealability limited to Nobles's claim that the inclusion of Jeter's statement at trial was a violation of the Confrontation Clause. We denied Nobles's request to expand the certificate of appealability.

## DISCUSSION

We review the district court's legal conclusions in a habeas proceeding *de novo* and its findings of fact under the clear-error standard. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (*en banc*). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), an application for a writ of habeas corpus may be granted if the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court unreasonably applies clearly established law if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 384-85, 413 (2000). "For [the] purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original) (quoting *Williams*, 529 U.S. at 410). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court]'s precedents." *Id.* at 102.

The Confrontation Clause of the Sixth Amendment affords criminal defendants the right to confront witnesses against them. U.S. Const. amend. VI. Under the Confrontation Clause, a testimonial statement of a witness who does not testify at trial cannot be admitted unless the witness is unavailable and the defendant had prior opportunity to examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "Testimonial" statements include, "at a minimum . . .[,] prior testimony at a preliminary hearing, before a grand jury, or at a former trial . . .[ ] and police interrogations." *Id.* at 68. The Confrontation Clause, however, reaches only hearsay; it "does not bar the use of the testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9. Instead, in order to implicate the Confrontation Clause, "the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005).

Neither party disputes that Jeter's statement, which was made to the police during an interview, was testimonial in nature. However, Nobles argues that the statement, although ostensibly admitted for the purposes of impeachment and to establish motive, was actually used

as substantive evidence identifying him as the shooter. To support this argument, he points to the prosecution's questioning of Lieutenant Nolan on whether Jeter identified Nobles as the shooter, and the prosecutor's comments during closing that Jeter "indirectly" told the jury who the shooter was and that Jeter "spoke from the grave." He also contends that Jeter's statement was not properly admitted as impeachment evidence because the statement itself did not actually contradict his claim that he was unaware that Jeter had implicated him in Kolby's shooting.

Nobles raised his Sixth Amendment claim for the first time in his motion for relief from judgment in state court. On review of that motion, the trial court determined that it was precluded from considering Nobles's Sixth Amendment claim because it was premised upon the contention that Jeter's statement was hearsay, an argument that the Michigan Court of Appeals had previously rejected in Nobles's direct appeal. *Nobles*, 2006 WL 1479561, at *3. Because the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal the trial court's denial of his motion for relief from judgment, the Michigan Court of Appeals on direct appeal issued the last reasoned opinion addressing the *substance* of Nobles's Sixth Amendment Claim—*i.e.*, whether Jeter's statement was inadmissible hearsay or non-hearsay impeachment material.[1]

The Michigan Court of Appeals determined that the trial court did not abuse its discretion in admitting Jeter's statement because it found that Jeter's identification of Nobles as the shooter "tended to impeach and undermine defendant's insistence that he had never called Jeter a snitch and had no reason to have threatened Jeter, as Whaley testified defendant had done," and because the trial court instructed the jury to consider Jeter's statement for impeachment purposes

---

[1] Nobles did claim on direct appeal to the Michigan Court of Appeals that because Jeter's statement was hearsay, its introduction had deprived him of a fair trial, given that it was "highly prejudicial to the defense" and that "the prosecutor later impermissibly argued the statement as substantive evidence of guilt."

alone, not for its truth. *Id.* The district court agreed that the statement was non-hearsay and admissible for impeachment purposes and, therefore, that the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

Strictly speaking, the ruling permitting introduction of Jeter's statement for its value as impeachment rests on shaky ground. The content of the statement read to the jury—*i.e.*, that Nobles was the shooter—did not contradict Nobles's testimony that he was unaware that Jeter had made a statement to the police regarding Kolby's death. The prosecution's reference to the fact that the statement was included in Nobles's discovery materials may have undercut Nobles's insistence that he did not know the statement existed, but the statement itself did not establish that Nobles knew of it at the time he was alleged by Whaley to have called Jeter a snitch and threatened him.

But even if Jeter's statement did not impeach Nobles's testimony as a technical matter, the admission of the statement does not appear to rise to the level of a Confrontation Clause violation. To violate the Confrontation Clause, a testimonial statement admitted at trial must be *used* as hearsay. *Pugh*, 405 F.3d at 399. The record here fails to show that Jeter's statement was offered for the truth of what Jeter asserted—*i.e.*, Nobles was the shooter. Rather, it is clear that the prosecution sought to introduce Jeter's statement only for non-hearsay purposes, and only after Nobles denied calling Jeter a snitch or having any knowledge of Jeter's statement. Moreover, the statement was read *after* the court instructed the jury that the statement was "not being offered for the truth of the matter asserted" and that the jury "[could not] use it for that purpose." Jurors are "almost invariabl[y] assum[ed]" to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 206 (1987), and Nobles ultimately offers no evidence or argument to refute this assumption.

Moreover, Lieutenant Nolan did not testify that Nobles *was* the shooter, only that Jeter identified him as such; his testimony was thus consistent with the prosecution's attempt to establish that Nobles had a motive to attempt to prevent Jeter from testifying. It also, perhaps superfluously, corroborated the fact that Jeter made the statement.

The prosecutor's comments that Jeter "spoke from the grave" similarly concerned the impeachment value of Jeter's statement and its role as motive evidence, not its substantive truth. The prosecutor made comments of this nature three times. The first was made after the prosecutor explained that Jeter's statement had been introduced "only because -- for impeachment purposes. . . . to show that the Defendant was lying when he told you I had no reason to call Rod, and Rod never talked to Homicide," and that Lieutenant Nolan's testimony was intended to prove that Nobles had lied in denying that Jeter had made a statement to the police. The prosecutor repeated the comment in the course of arguing that Nobles had encouraged Jeter to leave Detroit until after his case was over and had threatened Jeter after he returned to Detroit. She made the final reference to Jeter speaking "from the grave" just before describing the nature of the obstruction of justice and subornation charges and the evidence against Nobles on both. No instance of the comment suggests that the prosecutor delivered it for any purpose other than to remind the jury that Jeter had made a statement to police and that, in doing so, he had given Nobles a reason to attempt to dissuade him from testifying.

The prosecutor's comment that Jeter's statement "indirectly" identified the shooter was is more troubling. After acknowledging that the jury might have had reservations about Rocky's behavior before and after Kolby's shooting, the prosecutor stated:

> When you decide, going back to the three people left in the car, you have Rocky. You have Rod Jeter and you have Kelly Nobles. All three directly or indirectly tell you who shot at the Coney Island.

In context, this comment can reasonably be interpreted as encouraging the jury to use Jeter's statement as evidence of who shot Kolby. When taken with the numerous other references to Jeter's statement that were accompanied by cautionary instructions that it was not being offered for its truth, however, this comment alone is insufficient to establish that the admission of Jeter's statement violated the Confrontation Clause.

And even if we were to determine that the prosecutor's reference to Jeter's statement violated the Confrontation Clause, we would also conclude that the violation was harmless error. *McCarley v. Kelley*, 759 F.3d 535, 547 (6th Cir. 2014) (holding that Confrontation Clause violations are subject to harmless-error analysis). A Confrontation Clause violation must have a "'substantial and injurious effect or influence in determining the jury's verdict'" to merit reversal on collateral review. *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). In a review for constitutional harmlessness, we look to the statement's significance to the prosecution's case, whether it was cumulative, the presence or absence of corroborating evidence, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.* Here, the factors favor a finding of harmless error. Jeter's statement played no part in the prosecution's case-in-chief, and two witnesses, Rocky and Whaley, corroborated it.

We thus conclude that the determination by the Michigan Court of Appeals that the trial court did not abuse its discretion in admitting Jeter's statement was neither contrary to nor an unreasonable application of federal law. As a result, Nobles's petition for a writ of habeas corpus must be denied on the merits.

**CONCLUSION**

Having determined that the district court correctly denied relief in this case for the reasons set out above, we find it unnecessary to address the procedural question concerning equitable tolling.  We therefore AFFIRM the judgment of the district court based on its ruling on the merits.